William R. GARDNER, Appellant
(Plaintiff below),

v.

Bill NATION, Mayor of the City of Cheyenne, and members of the City Council of the City of Cheyenne, et al., Appellees (Defendants below).

No. 4297.

Supreme Court of Wyoming.

June 10, 1974.

Benedict D. Trierweiler of Trierweiler & Bayless, Cheyenne, for appellant.

Maxwell E. Osborn, City Atty., Cheyenne, for appellees.

Before PARKER, C. J., and McEWAN, GUTHRIE, McINTYRE and McCLINTOCK, JJ.

Mr. Justice McCLINTOCK delivered the opinion of the Court.

William R. Gardner, hereinafter referred to as plaintiff, appeals from the decision of the district court of Laramie County, Wyoming declaring that he is not entitled to remain a member of the Cheyenne Fire Department after reaching the age of 65.

Plaintiff began working for the Cheyenne Fire Department on January 1, 1954 and thereafter worked continuously until

he was involuntarily retired on June 30, 1973. He became 65 on January 15, 1973, but apparently there was some delay in the intra-office processing of the termination, and it was not until May 31, 1973 that a letter over the signature of J. Arling Wiederspahn, Chairman of the Cheyenne Fire Department Civil Service Commission, notified him of his termination as of June 30, 1973 and that benefits would be computed to that time. Personnel records of the city state that Gardner "will retire effective June 30, 1973".

The Firemen's Pension Fund was created by statute in 1935[1] and since its inception paid firemen have had a percentage of their wages deducted as a contribution to the fund. At the time of plaintiff's employment in 1954 a pension of $125 a month was payable only to a fireman who had served 25 years, except that one who was in service at the time of the enactment of the fund could retire at age 60 regardless of the time of service.[2] This proviso was eliminated in 1955[3] as part of a rather extensive revision of the plan which for the first time provided for refund of a fireman's contributions if his employment exceeded five years and was less than 10 years, except for 1/2% retained as administration expenses. After 10 years he had the option to take the refund or upon the 25th anniversary of his employment draw a monthly pension in an amount which was the result of multiplying his years of service by 50% of the maximum monthly salary of a fireman first class and dividing by 25, this last figure being the number of years of service necessary for a full pension, which at that time was fixed at $175 per month. In 1963 the number of years required for full pension was changed to 20 and the denominator of the above computation was similarly changed to 20. The full pension was also changed from $175 to 50% of the maximum monthly salary of a fireman first class.[4]

During the period of plaintiff's employment the benefits payable to a widow were also changed. Under the law as amended at the inception of his employment[5] the widow of a fireman pensioner was entitled to one-half of what his pension had been, or as to a fireman who had died as the result of accident, injury or exposure in the line of duty, and only in the event of such death, she would receive one-fourth of the compensation which the deceased fireman had been drawing at the time of his death. By the 1955 act the widow succeeded to a fixed pension of $125 a month upon the death of her husband from any cause while employed as a fireman, or two-thirds of any pension which he might have been drawing at his death. In 1963 the widow's pension was changed to one-third of the maximum salary of a fireman first class, whether the death was during employment or after retirement. Although there have been changes in the pension fund law since 1963, the provisions as to benefits, both as to firemen and their widows, remain substantially unchanged.

Since 1933 municipal fire departments have operated under a Fire Department Civil Service,[6] which in its original and present form provides the manner of discharge of personnel then or thereafter employed as members of the fire department. This law was amended in 1961[7] by dividing the existing law into paragraphs (a) and (b) and adding a new paragraph (c) providing essentially that when a member of a fire department of any city subject to the provisions of the act shall have reached

---

1. Chapter 23, S.L. of Wyoming, 1935. As amended it is now found as §§ 15.1–303 et seq., W.S.1957, C.1965.

2. Chapter 149, S.L. of Wyoming, 1949.

3. For this and subsequent references to the 1955 law, see Ch. 219, § 2, S.L. of Wyoming, 1955.

4. For this and subsequent references to the 1963 act see Ch. 178, §§ 3 and 4, S.L. of Wyoming, 1963.

5. See n. 2, *supra*.

6. Chapter 49, S.L. of Wyoming, 1933, §§ 15.1–281 et seq., W.S.1957, C.1965.

7. Chapter 206, § 2, S.L. of Wyoming, 1961, § 15.1–293, W.S.1957, C.1965.

age 60 the commission "shall order and direct that such person be retired from further service with such fire department", with the proviso that if the fireman can continue to pass mental and physical qualification tests he "may be retained to the date of his sixty-fifth (65) birthday".

From this summary of the history of the law it is seen that when plaintiff first entered into his employment there were certain statutory guarantees that he would not be discharged from his position except upon certain procedures and there was no statutory limitation upon the time during which he could serve as a fireman. During his employment there were a number of changes in the pension system, most of which may be considered to his benefit, but some of which might not. The record does not disclose that separate funds have ever been maintained, dependent upon a fireman's date of first service, and plaintiff's action does not attempt to tie his retirement rights to the law as it existed in 1954 nor to any particular enactment since that time. Plaintiff's basic contention is that the compulsory retirement provision of § 15.1–293(c), W.S.1957, C.1965, is either not applicable to him or if so applied, is in violation of his constitutional and contractual rights, citing § 10 of Article 1 of the federal constitution and § 35 of Article 1 of the Wyoming constitution. He also claims that his "discharge", as he terms it, is in violation of the procedural requirements of paragraph (b) of this same section, in that it was not the official action of the civil service board, taken after notice and hearing as required by that section.

■ Section 15.1–293(c) specifically directs the commission to order retired a person who has reached the age of 60, the only exception being that his service may be extended to age 65 if he can pass annual mental and physical qualification tests. Paragraph (b) of this section states that discharge may be made for any cause, not political or religious, which will promote the efficiency of the service, on written notice and specifications filed with the commission and served on the person affected by the authority requesting the discharge. The very language itself connotes a charge that the person sought to be removed has in some way failed to carry out the functions of his employment. Simple justice requires that he have opportunity to know the charges and defend against them. But paragraph (c) says nothing about filing any charges, giving notice, or conducting a hearing. In the case of a fireman between the ages of 60 and 65 it is possible that questions might exist as to the fairness of the physical or mental tests administered, or whether they demonstrated the unfitness of a particular candidate for extended employment. But in Gardner's case the only possible question would seem to be whether he had in fact reached the age of 65. He has not disputed this, and since his retirement was a termination by operation of law no good purpose would be served by requiring a hearing before the commission and entry of a formal order instead of the letter and termination notice that were used in this case.

We believe the distinction between discharge and retirement is clearly established by decisions of other appellate courts. In Coopersmith v. City and County of Denver (1965), 156 Colo. 469, 399 P.2d 943, 948, it is said:

"As to rights protected by civil service, it has been held that mandatory retirement provisions do not contravene a civil service requirement that firemen can only be removed for cause and then only after following the requisite procedure of giving notice and holding a hearing."

In Ellsworth v. Municipal Officers of City of Portland (1946), 142 Me. 200, 49 A.2d 169, 170, it was claimed that the action of the city putting plaintiff in retired status violated an ordinance relating to civil service and providing for removal for cause upon presentation of charges and after a hearing. The court said:

"* * * If there were evidence that the city had retired these officers to circumvent the provision of this ordinance

with respect to the right to a hearing on charges, we might have a different problem. But the record discloses no such action by the city."

In Fox v. City of Columbia (Tenn. 1973), 491 S.W.2d 353, 354, the court discussed city charter provisions relative to civil service, and said that provisions of the pertinent ordinance

"that Civil Service employees may be 'dismissed, suspended, reduced in rank, or otherwise punished only by judgment of the Civil Service Board after trial and conviction by said Civil Service Board upon a written charge or charges,' leaves no doubt that the charter section was intended to relate exclusively to the subject of the manner in which Civil Service employees might be disciplined, and makes it clear that the section has nothing to do with the subject of the termination of employment because of age."

In re Wallington's Appeal (1957), 390 Pa. 416, 135 A.2d 744, 745 involved a city ordinance requiring retirement. It was said:

"Merely because an individual has attained a civil service status, this does not guarantee to him life tenure; nor does it necessarily afford him the right to a hearing. We have consistently held that the purpose of the Civil Service acts is to insure employment, and security and protection for faithful and obedient public servants, regardless of political affiliation. Gaul v. City of Philadelphia, 384 Pa. 494, 499, 121 A.2d 103. This is not a dismissal, based upon misconduct, incompetence, or political affiliation, but retirement based upon age limitation. The only useful purpose a hearing could serve, would be a denial of their age. However, since petitioners did not press this matter in their petition, nor before this bench, it must be assumed each has attained the requisite age for mandatory retirement as set forth in the ordinance."

In addition to these authorities we think that both Leary v. City of Philadelphia (1934), 314 Pa. 458, 172 A. 459, and Boyle v. City of Philadelphia (1940), 338 Pa. 129, 12 A.2d 43, discussed more fully later in this opinion, clearly hold that a forced retirement, whether for economy reasons or age, is not a termination requiring notice and hearing.

■ Plaintiff does not raise any question as to the pertinency of the language of § 15.1–293(c) and we find no exception therein as to firemen who might not be able to reach age 60 or 65 with the years of service necessary for retirement at full pension. Plaintiff's argument is that to construe the section as applying to him would result in an unconstitutional violation of vested rights which he had acquired by reason of having rendered partial performance as a fireman. While not denying that plaintiff accumulated certain rights under the pension plan, the defendants contend that there is no vested right in plaintiff to continue work as long as he sees fit. Both parties cite Hanson v. City of Idaho Falls (1968), 92 Idaho 512, 446 P.2d 634, 636, recognizing that under the more modern and better authority in the United States employees' rights in public pension plans are vested, subject to "reasonable modification for the purpose of keeping the pension plan flexible and maintaining its integrity." As we have above indicated, plaintiff does not seek to attach himself to the plan in effect at the time of his employment and apparently concedes the power of the legislature to make some changes therein. The addition of paragraph (c) to § 15.1–293 did not specifically constitute a change in the pension plan but incidentally affected plaintiff's status thereunder because he could not attain the years of service necessary for the full pension. Whatever rights plaintiff had under the pension plan, we do not think that they went so far as to deny the legislature the right to regulate the terms of the employment and by a nondiscriminatory enactment to place a time limit upon the right to continued employment.

The question has not been widely considered but it has received careful attention in

Pennsylvania, and decisions from that state are to us completely persuasive that the imposition of reasonable age limits is not violative of any constitutional rights of a municipal employee.

The Supreme Court of Pennsylvania has held that reductions in force for reasons of economy are not a violation of civil service laws, Essinger v. Mayor and Council of City of New Castle (1923), 275 Pa. 408, 119 A. 479, Leary v. City of Philadelphia, *supra,* and in Boyle v. City of Philadelphia, 12 A.2d at 44, the same court was concerned with an ordinance providing for the compulsory retirement of certain firemen at the age of 65 and other classifications at the age of 60. In addition to rejecting the contention that the termination was violative of the civil service act the court specifically considered the argument that the compulsory retirement violated the applicable pension act. The court had already observed:

> " * * * Of course, in the absence of express statutory prohibition, the power is inherent in a municipality to prescribe reasonable and nondiscriminatory superannuation classifications, similar to those here set up, with respect to its firemen and policemen. Experience has demonstrated that generally one who has attained the age of sixty or sixty-five does not possess the physical vitality or energy of a younger man. Some maximum age limitation is particularly desirable, in fact necessary, for hoseman, ladderman, and patrolman, because the duties of those positions demand a greater degree of physical vigor and alertness than that exacted of superior officers."

After amplifying on the good reasons for such compulsory retirement in the case of firemen the court continued, at pp. 44–45:

> "Acts of strength, endurance, and bravery are not usually performed by men of three score years. They are generally physically incapable of such action. Whether the age at which the average man's physical and mental conditions show him unfit for strenuous and haz-

ardous work is fifty, sixty, or seventy is a question determined by the exercise of sound discretion based on experience, and that is exactly what the city council did in the ordinance before us. That the action taken represents a wise public policy cannot be doubted. There is no discrimination in the classes embraced in the ordinance, and no political, religious or personal motives are behind its enactment.

> " * * *

> "Where a bona fide attempt is made by a municipality to improve its police and fire service, and all employees of the same class are treated alike, it would seem that there can be no doubt that the municipality has the right to adopt a plan of demotion and retirement based upon age limitations. To say that for economy a police force can be reduced, but for efficiency men too old for real service cannot be retired, does not make sense. This is not the case of an individual, it is the case of all patrolmen, hosemen, and laddermen of Philadelphia. Our decision rests upon the particular facts here presented, involving a general, nondiscriminatory age classification. It does not open the door to removals for political or partisan reasons, made under the pretense of economy or efficiency."

With respect to the specific issue concerning the effect of the pension plan, it was said, at pp. 45–46:

> " * * * [B]y the establishment of a pension or retirement pay the legislature does not guarantee to public employees a tenure for the period of service specified as necessary to fulfill the pension requirements, nor does it intend thereby to interfere with the full right of a municipality to dismiss its employees for cause or for reasons of efficiency or economy. Underlying all pension legislation is the necessary principle that one who has been legally discharged prior to serving the prescribed term cannot share in the pension or retirement benefits. We so decided in Leary v. Philadelphia, supra,

where economy prompted the dismissal of certain policemen who had not yet served long enough to earn a pension."

The Pennsylvania court again had occasion to consider the question whether such compulsory retirement was discriminatory in McIlvaine v. Pennsylvania State Police (1973), 454 Pa. 129, 309 A.2d 801 and affirmed order of the Commonwealth Court on the opinion filed by that court, 6 Pa. Comwlth. 505, 296 A.2d 630, 633, considering and rejecting arguments that the ordinance was violative of constitutional prohibition against denial of civil rights and the Pennsylvania Human Relations Act, as well as the fourteenth amendment to the federal constitution.

■ We therefore hold that the provisions of § 15.1–293(c) were at all times applicable to plaintiff's employment, even though enacted after plaintiff had commenced his employment and that such mandatory requirement did not improperly interfere with any vested rights which he might hold under the pension plan by reason of his then seven years of service. We hold that the law was nondiscriminatory and involved a "general age classification" in the valid interests of the municipality and the state.

■ We think that what has been said disposes of plaintiff's contention that his discharge was in violation of § 21 of the contract between the city and the local fire fighters' union, which provided that neither the city nor the union should discriminate against any employee "because of race, creed, color, national origin, or Union affiliation with Local # 279 of the I.A.F.F. or for any other reason." Since the compulsory retirement provision is not discriminatory in a constitutional sense, we fail to see how its application to plaintiff, placing him in the same class as all other firemen who have reached the age of 65, can be said to be discrimination under the contract.

The judgment of the district court is affirmed.