Linda M. MONDT, Appellant (Petitioner),

v.

CHEYENNE POLICE DEPARTMENT; and Cheyenne Police Civil Service Commission, Appellees (Respondents).

No. 95–240.

Supreme Court of Wyoming.

Sept. 9, 1996.

Mitchell E. Osborn of Grant & Osborn, Cheyenne, for appellant (petitioner).

Wallace L. Stock of Bailey, Pickering & Stock, Cheyenne, for appellees (respondents).

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN* and LEHMAN, JJ.

GOLDEN, Justice.

A non-probationary police officer in the service of the City of Cheyenne, whose employment relationship is governed by the state's civil service law found in Wyo. Stat. §§ 15–5–101 through 121, challenges her forty-hour suspension without pay by her police chief. Her challenge requires us to answer

* Chief Justice at time of oral argument.

three important questions which lie at the heart of her public employment relationship:

1. Whether she has a constitutionally protected property interest in her continued public employment;

2. If she does, whether a forty-hour suspension without pay from that employment constitutes a deprivation of that protected property interest; and

3. If it does, what constitutionally required due process must the public employer afford the public employee when the deprivation occurs.

We hold that a non-probationary police officer in the service of the City of Cheyenne, whose employment relationship is governed by the state's civil service law found in Wyo. Stat. §§ 15–5–101 though 121, has a constitutionally protected property interest in her continued employment; a forty-hour suspension without pay from that employment constitutes a deprivation of that protected property interest; and, when the deprivation occurs, the public employer must afford the public employee constitutionally mandated pre-deprivation and post-deprivation due process.

## FACTS

On March 16, 1995, Roy E. Pack, Chief of Police, Cheyenne Police Department, imposed a forty-hour suspension without pay on Police Officer Linda Mondt, a non-probationary police officer in the service of the Cheyenne Police Department. According to the police chief, his action was based upon his review of an internal affairs investigation into allegations that Officer Mondt's job performance had been unsatisfactory. Police Chief Pack's written notification to Officer Mondt of his action stated in pertinent part:

The reasons for this suspension have been discussed with you on March 16, 1995. Those reasons include, but are not limited to the following: *Unsatisfactory Performance as outlined in our policy and procedures manual, Part I. Section 12.*

\* \* \* \* \* \*

You are *not* entitled to a hearing on this suspension. You do, of course, have the right to consult with an attorney of your choosing at your expense.

A copy of Wyoming Statute 15–5–112 is attached hereto for your convenience.

(Emphasis in original). Officer Mondt asserts that Police Chief Pack did not give her an opportunity to tell him her side of the matter. Thus, she contends he did not give her a predeprivation hearing. Officer Mondt's attorney made written request to the Cheyenne Police Civil Service Commission (Commission) for a hearing before that body. In that request she denied the allegations against her and alleged that the suspension violated her civil and constitutional rights to due process. The Commission denied that request. Thus, Officer Mondt contends that the Commission did not give her a post-deprivation hearing.

Officer Mondt's attorney then filed a petition for judicial review in the district court naming as respondents both the Cheyenne Police Department and the Cheyenne Police Civil Service System. In the petition, Officer Mondt's attorney stated in pertinent part:

The specific issues of law addressed to the District Court are whether the decision of the Respondent, attached hereto, is based upon substantial evidence and whether the decision was arbitrary, capricious and contrary to the law of the State of Wyoming, and further whether said denial of a hearing constitutes a denial of due process which is guaranteed under the Constitutions of the United States and State of Wyoming.

The facts relevant to the legal issues are concerning whether or not Petitioner's suspension was appropriate and with good cause and whether or not Petitioner was denied her guaranteed due process when she was refused a hearing to present her position as it relates to the suspension. Petitioner asserts that the denial of a review hearing is effectively denial (sic) her due process of law as she asserts a property right in her employment as a public employee.

The Cheyenne Police Department filed a motion seeking to have itself dismissed from the review proceeding, claiming that Officer Mondt's appeal was from the Commission's decision and not from any decision of the police department. The parties' appellate briefs inform us that the district court denied the police department's motion to dismiss. Although the record does not contain the district court's order denying that motion, it does contain the parties' pleading entitled STIPULATED FACTS AND QUESTIONS FOR CERTIFICATION TO SUPREME COURT PURSUANT TO W.R.A.P. RULE 12.09, which states, among other things, that the district court denied without prejudice the police department's motion to dismiss and "stated that the case should be certified to the Wyoming Supreme Court." The record contains the district court's ORDER OF CERTIFICATION OF QUESTIONS TO SUPREME COURT PURSUANT TO W.R.A.P. RULE 12.09. That order references the parties' aforementioned stipulation. Thus, this matter is before this Court upon the district court's certification.

In the parties' aforementioned stipulation, referenced in the district court's certification order, the parties have posed the following seven questions:

1. Does the grievance procedure for the Cheyenne Police Department, taken in conjunction with the City of Cheyenne Police Department Civil Service Commission Rules and Regulations and the City of Cheyenne Wyoming Police Manual, Policies and Procedures, allow or grant the Petitioner the right to an appeal and/or hearing upon the merits of a grievance, specifically, a suspension for disciplinary purposes?

2. Does Wyoming Statute 15–5–112 allow a Chief of Police for the Cheyenne Police Department to suspend an employee, specifically the Petitioner, for disciplinary purposes without a right of a hearing and, if so, does Wyoming Statute 15–5–112(c) violate the Petitioner's constitutional rights to due process?

3. Did the Cheyenne Police Department, in denying Petitioner a hearing, violate their own Policy and Procedure, and thereby violate Petitioner's rights?

4. Did the imposition of the suspension upon Petitioner for the stated offense violate the Cheyenne Wyoming Police Department's Manual and their Policy and Procedure provisions?

5. Was the decision by the Commission to deny Petitioner's request for hearing in the case of a suspension for disciplinary purposes "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law"?

6. Was the decision by the Commission to deny Petitioner's request for hearing in the case of a suspension for disciplinary purposes "contrary to constitutional right, power, privilege or immunity"?

7. Was the decision by the Commission to deny Petitioner's request for hearing in the case of a suspension for disciplinary purposes "without observance of procedure required by law"?

At some variance from those seven questions contained in the parties' stipulation, Officer Mondt presents in her appellate brief the statement of a single broad issue:

Was Appellant Linda D. Mondt, a non-probationary police officer, deprived of her right to due process, guaranteed under the Fourteenth Amendment, when she was suspended without pay for disciplinary reasons, pursuant to W.S. § 15–5–112, and was denied the opportunity for a hearing.

The appellate brief of the Cheyenne Police Department and the Cheyenne Police Civil Service Commission is also at some variance from the seven questions referred to in the parties' stipulation. Their brief states two issues:

I. Whether or not Linda Mondt, a non-probationary police officer, has a property right in her continued employment.

II. If W.S. § 15–5–112 and/or the Commission's regulations can be construed to grant a property right, has that right been taken from her without due process?

Having considered the seven issues contained in the parties' stipulation and the several issues stated in the parties' appellate briefs, as well as the arguments made in those briefs, we believe that the issues presented fairly reduce to the three questions of law we identified at the outset of this opinion.

## DISCUSSION

1. *General.*

The parties agree that the terms and conditions of employment of a City of Cheyenne police officer, like Officer Mondt, are controlled by the Wyoming statutes governing civil service employment found in Wyo. Stat. §§ 15–5–101 through 121 (1992 & Supp.1996). The parties also call our attention to certain provisions contained in the police department's manual and certain rules adopted by the Commission. The pertinent provisions in the police department manual establish a grievance procedure which permits an employee to present a grievance and an appeal without restraint; a progressive discipline procedure which categorizes offenses and provides for different types of discipline; and an appeal procedure which expressly states that appeals of suspension, demotion, and removal will follow the Commission's rules. The pertinent Commission rules provide for a hearing before the Commission in cases of discharge or reduction of classification or compensation, but not in cases of suspensions for disciplinary purposes. It seems fairly clear that the provisions of the police department manual and the rules of the Commission are essentially procedural, not substantive, in nature. Even were they substantive in nature to some extent, however, we understand that they can not legally contravene the substantive content of the civil service statutes pursuant to which they are promulgated. *State Dept. of Revenue and Taxation v. Pacificorp*, 872 P.2d 1163, 1166 (Wyo. 1994); *Tri County Telephone Ass'n, Inc. v. Wyoming Public Service Comm'n*, 910 P.2d 1359, 1361 (Wyo.1996); *and see Graham v. City of Oklahoma City, Okla.*, 859 F.2d 142, 146 (10th Cir.1988) (referring to *Umholtz v. City of Tulsa*, 565 P.2d 15 (Okla.1977)). Accordingly, we are more interested in and shall examine the content of the Wyoming civil service statutes, rather than the provisions of the police department manual and the Commission's rules, as we proceed to determine the answers to the three questions before us.

## 2. *Property Interest.*

■ The applicability of the constitutional guarantee of procedural due process depends in the first instance on the presence of a legitimate "property" or "liberty" interest within the meaning of the Fifth and Fourteenth Amendments to the United States Constitution. Several United States Supreme Court decisions provide us with the proper framework for analysis of whether Officer Mondt's public employment constituted a "property" interest as she claims. In *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972), the Court stated:

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. . . .
>
> Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

The Court recognized that a property interest may be created by statute as well as by contract. *Id.* at 576–77, 92 S.Ct. at 2708–09; *see also Abell v. Dewey,* 870 P.2d 363, 370 (Wyo.1994). In particular, the Court stated that a person may have a protected property interest in public employment if contractual or statutory provisions guarantee continued employment absent "sufficient cause" for discharge. *Roth,* 408 U.S. at 576–78, 92 S.Ct. at 2708–10.

This Court has previously applied this precedent in the public employment context to determine whether the legislature by statute has created a protected property interest in public school teachers, *Seyfang v. Board of Trustees, Washakie County School Dist. No. 1,* 563 P.2d 1376, 1381 (Wyo.1977); *Board of Trustees, Laramie County School Dist. No. 1 v. Spiegel,* 549 P.2d 1161, 1170 (Wyo.1976); in a municipal judge, *Town of Upton v. Whisler,* 824 P.2d 545, 548–49 (Wyo.1992); and in a deputy sheriff, *Lucero v. Mathews,* 901 P.2d 1115, 1119–20 (Wyo.1995). *See also Abell v. Dewey,* 847 P.2d 36, 40–41 (Wyo. 1993), *rehearing on other grounds,* 870 P.2d 363 (Wyo.1994) (state personnel rules conferred protected property interest on probationary employee).

In *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), the United States Supreme Court added an important additional feature to the *Roth* analytical framework. According to the Court, when a court analyzes a statute to determine whether the legislature has created a protected property interest, a court must remember that

> [t]he categories of substance and procedure are distinct. . . . "Property" cannot be defined by the procedures provided for its deprivation any more than can life or liberty.

*Id.* at 541, 105 S.Ct. at 1493. The Court made clear that a property interest is neither defined by nor conditioned on the legislature's choice of procedures for its deprivation. *Id.* Thus, the Court has clearly rejected the theory, on which the Court had been fragmented in *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974) (Justices Rehnquist and Stewart and Chief Justice Burger held the view that the procedural limitations were incorporated into the substantive interest; Justices Powell, Blackmun, White, Marshall, Brennan, and Douglas held the opposite view that the substantive interest was not defined by the procedural limitations), that where the legislature's grant of a substantive right is inextricably intertwined with the limitations on the procedures which are to be used in determining that right, a litigant seeking the sweet of that right must take the bitter of the procedural limitation. *Loudermill,* 470 U.S. at 540–41, 105 S.Ct. at 1492. As *Loudermill* states:

> In *Vitek v. Jones,* 445 U.S. 480, 491, 100 S.Ct. 1254, 1263, 63 L.Ed.2d 552 (1980), we pointed out that "minimum [procedural] requirements [are] a matter of federal law, they are not diminished by the fact that the State may have specified its own procedures that it may deem adequate for determining the preconditions to adverse official action." This conclusion was reit-

erated in *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 432, 102 S.Ct. 1148, 1155, 71 L.Ed.2d 265 (1982).... *Loudermill,* 470 U.S. at 541, 105 S.Ct. at 1492.

In sum, what process is due in Officer Mondt's case—once it is determined that a state statute confers a property interest in continued public employment and the Due Process Clause applies—is found, not in the Wyoming civil service statutes, but in federal constitutional law. *City of Laramie v. Kreiling,* 911 P.2d 1037, 1045 (Wyo.1996) (citing *Memphis Light, Gas and Water Div. v. Craft,* 436 U.S. 1, 9, 98 S.Ct. 1554, 1560, 56 L.Ed.2d 30 (1978)); *Perry v. Sindermann,* 408 U.S. 593, 602–03, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570 (1972). *Loudermill* teaches, then, that a court must discretely parse the statutory language to identify the substantive interest, if one exists, on the one hand, and the procedural mechanism for its enforcement, on the other hand.

Guided by the *Roth–Loudermill* analytical framework, we shall analyze the provisions of the civil service statutes, WYO. STAT. §§ 15–5–101 through 121, to determine whether they guarantee Officer Mondt a substantive interest in continued public employment absent "sufficient cause" for discharge. As we undertake this analysis, we are, of course, mindful of and shall be faithful to our statutory interpretation jurisprudence. *See Parker Land & Cattle Co. v. Wyoming Game & Fish Comm'n,* 845 P.2d 1040, 1042–45 (Wyo. 1993).

Because the public employment relationship at issue in today's case arises out of the Wyoming legislature's efforts over time to establish a sound civil service system, we begin with a brief overview of the history and purpose of the civil service system.

With respect to the federal civil service system, case law and scholarly commentary have traced its beginnings and evolution. *See, e.g., Arnett,* 416 U.S. at 148–51, 94 S.Ct. at 1641–43; Kathleen V. Buffon, Comment, *Removal For Cause From the Civil Service: The Problem of Disproportionate Discipline,* 28 AM. U.L.REV. 207, 210–12 (1979); Richard A. Merrill, *Procedures For Adverse Actions Against Federal Employees,* 59 VA. L.REV. 196 (1973); William P. Berzak, *Rights Accorded Federal Employees Against Whom Adverse Personnel Actions are Taken,* 47 NOTRE DAME LAWYER 853 (1972); M.N. Chaturvedi, *Legal Protection Available to Federal Employees Against Wrongful Dismissal,* 63 Nw. U.L.REV. 287 (1968); *Developments in the Law—Public Employment,* 97 HARV. L.REV. 1611 (1984); and Gerald E. Frug, *Does the Constitution Prevent the Discharge of Civil Service Employees?,* 124 PA. L.REV. 942 (1976).

In *Arnett,* the Court treated the federal civil service statutory scheme found in 5 U.S.C. § 7501, subsection (a), of which provides that "[a]n individual in the competitive service may be removed or suspended without pay only for such cause as will promote the efficiency of the service." 416 U.S. at 140, 94 S.Ct. at 1637. Although Professor Merrill notes that the legislative history is silent as to the meaning of the quoted phrase, Merrill, *supra,* at 236, in *Arnett* the Court observed that Congress intended to confer "job protection rights on federal employees which they had not previously had...." 416 U.S. at 162, 94 S.Ct. at 1648. Professor Merrill states, "[c]learly, the phrase applies at least to inefficiency in the colloquial sense—inability to perform in the job." Merrill, *supra,* at 236. He further observes, "[w]ith growing frequency, the federal courts have insisted an agency show that some rational nexus [exist] between an employee's behavior and its legitimate needs as an employer that justify his removal." *Id.* In *Arnett,* the Court recognized that the phrase is directed "at employee behavior, including speech, which is detrimental to the efficiency of the employing agency." 416 U.S. at 162, 94 S.Ct. at 1648. Accordingly, the Court concluded that "Congress ... with unmistakable clarity granted governmental employees security against being dismissed without 'cause'...." *Id.* at 154, 94 S.Ct. at 1644. The Court said:

Congress sought to lay down an admittedly general standard ... in order to give myriad different federal employees performing widely disparate tasks a common standard of job protection. We do not believe that Congress was confined to the choice of

enacting a detailed code of employee conduct, or else granting no job protection at all.

*Arnett,* 416 U.S. at 159, 94 S.Ct. at 1647.

With respect to Wyoming's civil service system, the legislative history, like the federal legislative history about the meaning of the standard "for such cause as will promote the efficiency of the service," is silent. Our case law, however, is not silent. Almost a half-century ago, Justice Blume explained that the purpose of the civil service legislation "is to have police officers appointed according to merit and efficiency." *Fristam v. City of Sheridan,* 66 Wyo. 143, 147, 206 P.2d 741 (1949). Justice Blume noted that civil service laws exist generally all over the United States. *Fristam,* 66 Wyo. at 152, 206 P.2d at 744. *See* Norman B. Smith and Patricia Gebala, *Job Security For Public Employees,* 31 WASH. & LEE L.REV. 545 and appendix (1974). Commenting on New Jersey's civil service law, the esteemed Chief Justice Arthur Vanderbilt wrote:

> We must bear in mind that the primary object and purpose of the civil service law is to secure for government, state, county and municipal, efficient public service in all its many functions. The welfare of the people as a whole, and not specifically or exclusively the welfare of the civil servant, is the basic policy underlying the law; and to effectuate that policy it has long been recognized that the statutes must be liberally construed....

*Borough of Park Ridge v. Salimone,* 21 N.J. 28, 120 A.2d 721, 729 (1956) (citations omitted).

As we examine WYO. STAT. §§ 15–5–101 through 121—in order to see the forest and not just the trees—to get a sense of the tenor of the legislation, we find credible evidence upon which to form such a sense. The legislature has provided that civil service employment in the police department shall be based upon impartial examinations which "relate only to matters which test the fitness of the persons examined to perform the services required in the class or schedule [based upon the nature of the service to be rendered or duties to be performed] covered by the examination." WYO. STAT. § 15–5–106(a) and

(b) (1992). An examinee must attain a proficiency percentage of 75% or more to be certified for employment. WYO. STAT. § 15–5–107 (1992). The employing governmental body seeks to fill positions from among applicants having the highest percentage of proficiency. WYO. STAT. § 15–5–108 (1992). In the case of police departments, an employee's first eighteen months of employment or a period of not less than twelve months if up for a promotion is on a trial basis. WYO. STAT. § 15–5–109 (Supp.1996). If the employee's conduct "has been satisfactory during the trial period, he may be regularly employed or promoted, as applicable." *Id.* Commissioners who serve on a police department civil service commission take an oath "that in no event will they appoint or *remove* any person because of his political opinions or *for any reason other than the person's fitness or unfitness.*" WYO. STAT. § 15–5–103(b) (1992) (emphasis added). Promotion of an individual is to be on the basis of "merit, experience and good record." WYO. STAT. § 15–5–119(a)(i)(B) (1992). So far, from our survey of that part of the statutory forest in which the above and foregoing provisions stand, we can conclude that the tenor of the legislative scheme is obviously performance and fitness based.

We now turn to those statutory provisions on which the litigants have exclusively focused. In its entirety, WYO. STAT. § 15–5–112 (1992) provides:

> § 15–5–112. Retention of positions; discharge; grounds and procedure; retirement of firemen.
>
> (a) All persons occupying positions affected by this article may retain their positions until discharged under its provisions.
>
> (b) Discharge from a department, or reduction in grade or compensation, or both, may be made for any cause, not political or religious, which will promote the efficiency of the service, on written notice and specifications filed with the commission and served upon the person affected by the authority requesting the discharge or reduction. The person whose discharge or reduction is sought is allowed a reasonable time to answer the charges in writing and demand a hearing. The commission,

after hearing or investigation, shall determine whether the reason for discharge is sufficient and established. Except as otherwise provided in subsection (c) of this section no person may be discharged or reduced in pay or rank without consent of the commission after a hearing, unless the action is pursuant to a classification program under W.S. 15–5–106. A copy of the specifications, notice, answer, consent and order of discharge or reduction are a part of the public records of the commission.

(c) In the case of a police department:

(i) A chief of police or his representative, after written notice, may suspend any regular employee without pay for disciplinary purposes. The chief or his representative shall file with the commission, on or before the effective date of the suspension, a written statement of the causes for such action;

(ii) A chief of police or his acting chief may discharge or reduce in grade any employee if he considers that the good of the service will be served thereby. Any employee who is discharged or reduced in grade has the right to answer in writing the statement of the chief as to the cause for his discharge or reduction in grade, as the case may be, and to file this and any other affidavits and exhibits in support of his statement with the commission.

(d) If any person in the fire department becomes sixty (60) years of age, the commission shall order that person retired from further service. However, if the person can pass annual mental and physical qualifications tests set by a physician chosen by the commission and governing body and given at no cost to the employee, he may be retained until he becomes sixty-five (65) years of age.

Parsing these provisions, we find that the legislature has divided civil service employees into two groups for job security purposes—police department employees on the one hand and non-police department employees on the other. In 112(b), the legislature addresses the job security of non-police department employees. Applying the lesson of *Loudermill,* we parse that subsection to identify its substantive and procedural elements and, thus, separate them from each other. We identify readily the phrase "[d]ischarge ... may be made for any cause, not political or religious, which will promote the efficiency of the service...." It is in that phrase that we will find the substantive interest if one exists. Obviously, that phrase closely resembles the federal civil service phrase mentioned earlier in our discussion of *Arnett.* In that case, the Supreme Court found a property interest—a "cause" standard of employee job protection. *Arnett,* 416 U.S. at 154, 94 S.Ct. at 1644. Leaving 112(b) for the moment, we find in 112(c) that the legislature addresses the job security of police department employees. Parsing that subsection, we readily identify two phrases which are the loci in which we will find the substantive interest, if one exists. In 112(c)(i), the legislature uses the phrase "suspend any regular employee without pay for disciplinary purposes...." In 112(c)(ii), the legislature uses the phrase "discharge ... any employee if he considers that the good of the service will be served thereby."

As is to be expected, the litigants have diametrically opposite views about whether in these specific phrases the legislature has established a "cause" standard of police department employee job protection. The Commission and the Police Department are of the view that no language in either Wyo. Stat. § 15–5–112(c)(i) or (ii) creates a property right. They maintain that the phrases "for disciplinary purposes" in 112(c)(i) and "good of the service" in 112(c)(ii) do not contain a "cause" requirement which creates a property interest. Foregoing an in-depth analysis of the forest of the civil service statutory provisions and a thorough exercise in statutory interpretation, they rely on *Joyce v. Webber,* 157 Me. 234, 170 A.2d 705 (1961), which was decided before *Arnett, Roth,* and *Loudermill.* In *Joyce,* the Maine court refused to issue a writ of mandamus to compel the City of Portland's Civil Service Commission either to grant an original hearing on or alternatively to hear an appeal of the five-day suspension without pay imposed by the city's police chief on a city police officer. One section of the city's civil service

ordinance set forth the police chief's suspension powers for disciplinary purposes and the procedures attending the exercise of those powers. Two other sections of the ordinance set forth the more extensive suspension and removal powers vested in the civil service commission and the procedure attending the exercise of those powers. The procedures attending the police chief's suspension powers did not provide for notice, lodging of charges, or a hearing, while the procedures attending the commission's suspension and removal powers did. All of the sections provided, however, for the exercise of the adverse action power if "cause" existed. In the police chief's section, the language was detailed:

> on account of violation of department rules, inefficiency, incompetence, misconduct, negligence, insubordination, disloyalty, or other sufficient cause....

*Joyce,* 170 A.2d at 706. In the commission's sections, the language was substantially abbreviated: "for cause." *Joyce,* 170 A.2d at 707. The suspended police officer contended that the phrase "or other sufficient cause" in the police chief's section inferentially provided for notice and hearing. Rejecting that view, the Maine court held that "the civil service employee has no *protection* against suspension and removal *except* as may be specifically provided by the civil service statute or ordinance in effect." *Id.* (emphasis added). Justifying the disparate *procedural protections* found in the several sections, the court explained, in relevant part:

> A police department necessarily partakes of some of the attributes of a military establishment. Discipline and order must be maintained and a measure of unquestioned authority must be vested in the responsible commanding officer. The ordinance quite realistically takes this into account by vesting in the Chief of Police carefully limited powers of disciplinary action which he may employ without the necessity of notice, preferment of formal charges or hearing. From his exercise of these powers no appeal is provided.

*Id.* The Commission and the Police Department rely on the above-quoted passage as providing the best rationale for WYO. STAT. § 15–5–112(c)(i), which sets forth the police chief's power of suspension without pay and does not set forth any procedural protections. Going even further, the Commission and the Police Department take the position that, since 112(b) expressly excepts police officers from its procedural protection of a commission hearing ("Except as otherwise provided in subsection (c) of this section no person may be discharged ... without consent of the commission after a hearing ....), the legislature did not confer a property right by statute on any police officer in the state."

The reasoning of the Commission and the Police Department is wrong. They, and the Maine court which decided *Joyce* in 1961, are erroneously relying on the "bitter-with-the-sweet" theory expressly rejected in *Loudermill.* Their reasoning is that the public employee's substantive interest is defined by the procedural protections conferred by the legislature. But, as we explained earlier and now apply to discredit such rejected reasoning, *Loudermill* requires us to identify and define the substantive interest without reference to the presence or absence or nature of procedural mechanisms which attend the statutory standard which informs the public employer of the boundaries of the exercise of its discretion in suspension or removal employment decisions. In *Joyce,* one looks in vain for any mention, let alone treatment, of the substantive interest created by the ordinance. Since the ordinance bases suspension and removal on "cause" grounds, it clearly creates a substantive interest in the police officer who was challenging the suspension action. In today's more enlightened legal climate after *Loudermill, Joyce* does not survive. *See, e.g., Lucero,* 901 P.2d at 1120; *Abell,* 847 P.2d at 39; *Marvin v. King,* 734 F.Supp. 346, 354 (S.D.Ind.1990); *Cain v. Larson,* 879 F.2d 1424, 1426 (7th Cir.1989), *cert. denied,* 493 U.S. 992, 110 S.Ct. 540, 107 L.Ed.2d 537 (1989); and *Fleury v. Clayton,* 847 F.2d 1229, 1232 (7th Cir.1988).

Officer Mondt is of the view that the statutory language in question creates a property interest in her continued employment. Unfortunately, like her public employer and the Commission, she foregoes both an in-depth analysis of the civil service statutes and a

thorough exercise in statutory interpretation in support of her view. Instead, with little explanation, she baldly asserts that the statutory provisions that govern her employment relationship are similar to the statutory provision, WYO. STAT. § 18–3–611(b), which we found in *Lucero* to create a property interest in continued employment for a deputy sheriff. The statutory provision governing a deputy sheriff contains an express "for cause" requirement. The statutory provisions in question today do not contain those words.

Because neither litigant's presentation is particularly illuminating, we have largely fended for ourselves. Earlier in this opinion we surveyed the forest of the civil service statutory provisions, identifying various of those provisions which strongly suggest a merit and performance based tenor. We now narrow our focus to the phrases "for disciplinary purposes" contained in 112(c)(i) and "good of the service" contained in 112(c)(ii). The only case in which our Court has commented on a similar phrase was *Gardner v. Nation*, 522 P.2d 1281 (Wyo. 1974), in which this Court reviewed the predecessor statute of present-day WYO. STAT. § 15–5–112 in the course of determining whether a fireman was entitled to remain a member of the Cheyenne Fire Department after reaching the age of 65. While drawing a distinction between the subsection governing involuntary retirement upon a fireman's reaching age 65 and the subsection governing a fireman's discharge "for any cause, not political or religious, which will promote the efficiency of the service," this Court commented on that latter phrase as follows:

> The very language itself connotes a charge that the person sought to be removed has in some way failed to carry out the functions of his employment. Simple justice requires that he have opportunity to know the charges and defend against them.

*Gardner*, 522 P.2d at 1283.

The legislature has not defined the phrases "disciplinary purposes" and "good of the service." Therefore, we must consider the plain and ordinary meaning of the words used. The adjective "disciplinary" is defined in the dictionary as "designed to correct or punish breaches of discipline." MERRIAM WEBSTER'S

COLLEGIATE DICTIONARY 330 (10th ed.1994). The noun "discipline" is defined as "[p]unishment ... [;] control gained by enforcing obedience or order ... [;] a rule or system of rules governing conduct or activity." *Id.*

In light of these definitions, the phrase "disciplinary purposes" connotes that the employee against whom the employer is taking adverse action has in some way failed to carry out the duties, functions, and responsibilities of her employment. It reflects a connection with unfitness, substandard performance, or misconduct on the employee's part.

The noun "good" is defined as "advancement of prosperity or well-being [as in the good of the community]." *Id.* at 502. The adjective "good" carries many definitions, including "of a favorable character or tendency;" "suitable, fit;" and "competent, skillful." *Id.* In light of these definitions, the phrase that characterizes an employee's discharge as serving the "good of the service" connotes, similar to the phrase "efficiency of the service" as mentioned above, a rational connection between an employee's performance and the employer's needs justifying adverse action against the employee.

In the context of the purpose of the state's civil service laws to employ and promote individuals on the objective bases of merit, proficiency and fitness, the meaning of the phrases "disciplinary purposes" and "good of the service" is clear. Under these standards an individual's status cannot be altered because of something that does not reasonably relate to the individual's performance and the functioning of the police department. These phrases clearly suggest that something about a police officer's performance lacks merit, proficiency, or fitness; that the police officer's performance is detrimental to the service. As one court has expressed it in holding that the standard "satisfactory" limits the discretion of a civil service commission and imposes a significant substantive element upon that commission's employment decisions:

> [T]he Commission could not discharge a probationer or a permanent fire fighter because of, say, the color of his eyes, his interest in reading Mad magazine, his

backing of the Chicago Cubs, or any other arbitrary matter upon which employers of at-will employees are free to base their employment decisions.

*Marvin,* 734 F.Supp. at 354.

■ We hold that the standards of "disciplinary purposes" and "good of the service" as set forth in WYO. STAT. § 15–5–112(c)(i) and (ii) are the equivalent of a "for cause" standard, limit the public employer's exercise of discretion, and are sufficient foundations upon which to base a property interest in continued employment. We hold, therefore, that Officer Mondt has a protected property interest in continued employment as a non-probationary police officer.

We now address whether the forty-hour suspension without pay constitutes a deprivation of Officer Mondt's protected property interest.

### 3. *Deprivation.*

■ Other courts have had occasion to examine the question of whether a temporary suspension from employment, as distinguished from a discharge from employment, is significant enough to trigger the protections of the Due Process Clause. *See, e.g., Gillard v. Norris,* 857 F.2d 1095, 1098–1100 (6th Cir.1988); *Garraghty v. Jordan,* 830 F.2d 1295, 1299 (4th Cir.1987); *Boals v. Gray,* 775 F.2d 686, 690–91 (6th Cir.1985); and *Click v. Board of Police Comm'rs,* 609 F.Supp. 1199, 1204 (D.C.Mo.1985). These decisions guide us today in determining whether Officer Mondt's forty-hour suspension without pay is significant enough to trigger the protections of the Due Process Clause. These decisions are anchored by that said in *Roth* and *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975):

> [I]n determining "whether due process requirements apply in the first place, we must look not to the 'weight' but to the *nature* of the interest at stake." *Board of Regents v. Roth,* [408 U.S.] at 570–71, 92 S.Ct. at 2705–06.... The Court's view has been that as long as a property deprivation is not *de minimis,* its gravity is

irrelevant to the question whether account must be taken of the Due Process Clause.

*Goss,* 419 U.S. at 575–76, 95 S.Ct. at 737.

Officer Mondt's right to continued employment includes the right to the office and its emoluments such as rank and compensation. A police officer who is suspended for forty hours without pay loses those emoluments for the period of suspension. Five-day suspensions without pay are not *de minimis* deprivations. *Garraghty,* 830 F.2d at 1299; *Gillard,* 857 F.2d at 1098; *Boals,* 775 F.2d at 697 (Wellford, J., concurring). A three-day suspension without pay was held not *de minimis* in *Click. Click,* 609 F.Supp. at 1204. *But cf. Carter v. Western Reserve Psychiatric Habilitation Center,* 767 F.2d 270, 272 (6th ·Cir.1985) (two-day suspension held *de minimis* ). Officer Mondt was deprived of compensation for forty hours. We hold that her suspension was not *de minimis* and is significant enough to trigger the protections of the Due Process Clause.

We next consider the requisite process to which Officer Mondt was entitled.

### 4. *Due Process.*

Since we have determined that the Wyoming legislature has conferred on Officer Mondt a protected property interest in continued employment, we must follow *Loudermill*'s holding that the Due Process Clause, not Wyoming's civil service law which created the property interest, prescribes the procedural minima. *Loudermill,* 470 U.S. at 539–41, 105 S.Ct. at 1491–93; *and see Patrick v. Miller,* 953 F.2d 1240, 1244–45 (10th Cir.1992); *Miller v. City of Mission, Kan.,* 705 F.2d 368, 374–75 (10th Cir.1983); and *Fleury v. Clayton,* 847 F.2d 1229, 1232 (7th Cir.1988).

Officer Mondt claims due process violations with respect to both Police Chief Pack's suspension action and the Commission's action denying a post-deprivation hearing. She asserts particularly that Police Chief Pack did not let her tell her side of the matter before he suspended her. Therefore, we shall discuss what process was due Officer Mondt before Police Chief Pack suspended her as well as what process was due her

before the Commission following that suspension.

## A. *Pre-deprivation Due Process.*

■ The United States Supreme Court has considered the process due a discharged employee with the right to continued employment and the process due a suspended student with the right to education. *Loudermill,* 470 U.S. at 542, 105 S.Ct. at 1493; *Goss,* 419 U.S. at 581, 95 S.Ct. at 740. In *Goss,* the Court determined that due process entitled a student facing suspension to oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story. *Goss,* 419 U.S. at 581, 95 S.Ct. at 740. The Court did not require a delay between the time notice is given and the time of the hearing, meaning that in the great majority of cases due process was served by the disciplinarian informally discussing the alleged misconduct with the student minutes after it occurred. The Court held only "that, in being given an opportunity to explain his version of the facts at this discussion, the student first be told what he is accused of doing and what the basis of the accusation is." *Goss,* 419 U.S. at 582, 95 S.Ct. at 740. Balancing the student's interest against the school's, the Court found that the student's interest in not being unfairly excluded from the education process did not require further formalizing the suspension process and escalating its formality and adversary nature. In its view it not only may make it too costly as a regular disciplinary tool, but also may destroy its effectiveness as part of the teaching process. *Goss,* 419 U.S. at 583, 95 S.Ct. at 741.

In the discharge case of *Loudermill,* the Court employed the test set out in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), of balancing the competing interests at stake. *Loudermill,* 470 U.S. at 542, 105 S.Ct. at 1493. Those competing interests are the employee's interest in retaining employment, the government's interest in expeditiously removing unsatisfactory employees and avoiding administrative burdens, and guarding against the risk of an erroneous deprivation. The Court determined that before termination, an employee with a protected property right is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story before discharge. *Loudermill,* 470 U.S. at 546, 105 S.Ct. at 1495.

These cases teach that an employee facing suspension without pay is probably entitled to more due process than *Goss* afforded a suspended student and less due process than *Loudermill* afforded a discharged employee. *Gillard,* 857 F.2d at 1099; *Garraghty,* 830 F.2d at 1300. In determining what process is due Officer Mondt, the timing and content of the notice and the nature of the hearing depend on appropriately accommodating the competing interests involved. *Goss,* 419 U.S. at 579–80, 95 S.Ct. at 738–39. The competing interests here are claimed to be Officer Mondt's interest at stake in preserving her pay and other office emoluments from an unwarranted suspension; Cheyenne's claim that its police department has an interest in swiftly correcting misconduct in order to maintain discipline and integrity in a paramilitary type organization; and our perception that the risk of error is substantial because the action came upon the report and advice of others and Officer Mondt disputes the allegations.

In weighing these claimed interests we note that it is judicially recognized that law enforcement often relies on a paramilitary organizational structure to develop discipline, *esprit de corps,* and uniformity because of its substantial interest in insuring the safety of persons and property. *Hughes v. Whitmer,* 714 F.2d 1407, 1419 (8th Cir.1983), *cert. denied,* 465 U.S. 1023, 104 S.Ct. 1275, 79 L.Ed.2d 680 (1984); *see also Kelley v. Johnson,* 425 U.S. 238, 246–47, 96 S.Ct. 1440, 1445–46, 47 L.Ed.2d 708 (1976). Decisions have recognized that a highway patrol organization has a substantial interest in regulating activities of its officers in order "to promote efficiency, foster loyalty and obedience to superior officers, maintain morale, and instill public confidence in the law enforcement institution," *Gasparinetti v. Kerr,* 568 F.2d 311, 315–16 (3rd Cir.1977), *cert. denied,* 436 U.S. 903, 98 S.Ct. 2232, 56 L.Ed.2d 401

(1978); *Wilson v. Taylor*, 658 F.2d 1021, 1027 (5th Cir.1981), and a fire department like a police department has greater than normal government interest in maintaining morale and discipline. *Janusaitis v. Middlebury Volunteer Fire Dept.*, 607 F.2d 17, 26 (2nd Cir.1979). We agree that the police department as a paramilitary force does have a significant interest in swift disciplinary action; however, this interest does not outweigh Officer Mondt's important property interest or our recognition that "policemen, like teachers and lawyers, are not [to be] relegated to a watered-down version of constitutional rights." *Garrity v. New Jersey*, 385 U.S. 493, 500, 87 S.Ct. 616, 620, 17 L.Ed.2d 562 (1967). The police department's interest is also subject to the substantial risk of error presented in this case. The record indicates that an internal affair's investigation report resulted in Mondt's suspension. The department's rules state that an internal affair's investigation will be initiated upon the police chief's assignment of a supervisor. The investigator must submit a detailed written report including all facts, all interviews, all evidence, a finding and a recommendation. The rules specifically require the investigation be "well documented" with a file that contains all reports, statements, and any other documentation and which confines the investigation to the issue at question. Review of this file is at the chief's discretion if ordered by a court, requested by the accused officer if given a disciplinary sanction or if facing disciplinary action by a convened board of inquiry. Cheyenne Wyoming Police Department Manual, Policy and Procedure, Section 12 (2–3–12) *Internal Affairs Files.* As noted by the Court in *Goss*, when a disciplinary action is taken based upon the reports and advice of others, errors are likely and a meaningful opportunity to respond is required. *See Goss*, 419 U.S. at 579–80, 95 S.Ct. at 739.

Balancing these interests requires that risk-reducing procedures be afforded before a suspension. *Little v. City of Jackson*, 375 So.2d 1031, 1035 (Miss.1979), *cert. denied*, 445 U.S. 933, 100 S.Ct. 1325, 63 L.Ed.2d 768 (1980). If a full evidentiary hearing is not provided until after suspension, the following risk-reducing procedures must be afforded before suspension: written notice of the charges against her, knowledge of the basis of those charges either by explanation or by reviewing the file containing the report of the internal affairs investigation conducted and, in the case of the denial of the allegations, an effective opportunity to respond either in person or in writing to an impartial decision maker. *Little*, 375 So.2d at 1035; *Miller v. City of Mission, Kan.*, 705 F.2d 368, 372 (10th Cir.1983). In this case, the disciplinary action does not appear to have resulted from a confrontation between Officer Mondt and the Police Chief for insubordination or a similar situation and he appears to qualify as an impartial decision maker.

### B. *Post-Deprivation Due Process.*

A Cheyenne police department employee who denies the charges made against her is also entitled to a post-suspension hearing. *Loudermill*, 470 U.S. at 547–48, 105 S.Ct. at 1496. *Loudermill* requires a hearing which, at a minimum, determines whether reasonable grounds exist to believe that the charges against the employee are true and support the action. *Loudermill*, 470 U.S. at 545–46, 105 S.Ct. at 1495. Wyoming's civil service statute provides for a contested case hearing in accordance with the Wyoming Administrative Procedures Act (APA). Wyo. Stat. § 15–5–112(b) (1992); *Rolfes v. State ex rel. Burt*, 464 P.2d 531, 532 (Wyo.1970). Under Wyoming's APA, a contested case hearing entitles one to a full evidentiary hearing and examination of witnesses. Conducted in this manner, a contested case hearing exceeds the constitutional requirements set out in *Loudermill*. The Commission must comply with the statutory mandate and afford Officer Mondt a contested case hearing if she is suspended.

### CONCLUSION

The purpose of hearings is to prevent arbitrary disciplinary decisions and unfounded suspensions or terminations. Providing the pre-deprivation hearing described above will not constitute an unwarranted intrusion on the Cheyenne Police Department's interest in timely disciplining an employee's unsatis-

factory performance. In the event a suspended officer denies the allegations against her, following suspension she is entitled to a contested case hearing before the Commission.

Officer Mondt has denied the allegations and is entitled to pre-deprivation and postdeprivation hearings. The record is unclear as to whether her suspension has taken place. If the suspension was stayed, the district court is directed to remand the case to the Chief of Police to afford Officer Mondt pre-deprivation due process consistent with this opinion. If the suspension has occurred, the district court is directed to remand the case to the Chief of Police to pay her the forty hours of pay denied her, remove the suspension from her record, and afford her a hearing. Should the suspension occur following this hearing, the Commission is ordered to provide her a post-suspension hearing in accordance with this opinion.