# IN THE SUPREME COURT, STATE OF WYOMING

## 2021 WY 52

APRIL TERM, A.D. 2021

April 15, 2021

JENNIFER P. HANFT, as Personal
Representative of the Estate of BRET
LEE VANCE,

Appellant
(Plaintiff),

v.

CITY OF LARAMIE,

Appellee
(Defendant).

CITY OF LARAMIE,

Appellant
(Defendant),

v.

JENNIFER P. HANFT, as Personal
Representative of the Estate of BRET
LEE VANCE,

Appellee
(Plaintiff).

S-20-0068, S-20-0069

*Appeal from the District Court of Albany County*
*The Honorable Dawnessa A. Snyder, Judge*

*Representing Jennifer P. Hanft, Personal Representative of the Estate of Bret Lee Vance:*

A. Joe Hageman, Attorney at Law, Laramie, Wyoming


*Representing City of Laramie:*

William S. Helfand of Lewis Brisbois Bisgaard & Smith LLP, Houston, Texas; Amanda F. Esch of Davis & Cannon, LLP, Cheyenne, Wyoming. Argument by Mr. Helfand.

*Before DAVIS, C.J., and KAUTZ, BOOMGAARDEN, and GRAY, JJ., and TYLER, DJ.*


*DAVIS, C.J., delivers the opinion of the Court; GRAY, J., files a specially concurring opinion, in which KAUTZ, J., joins.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**DAVIS**, **Chief Justice**.

[¶1]    In 2012, the City of Laramie (City) discharged Bret Vance from his employment as a shift commander with the City's fire department, an action that required consent of the City's Fire Department Civil Service Commission (Commission).  Through a series of administrative proceedings and appeals, the Commission issued various orders concerning Mr. Vance's discharge, including an order by which it denied its consent to the discharge. In 2016, this Court issued a decision that gave effect to that order.  *Vance v. City of Laramie*, 2016 WY 106, ¶ 44, 382 P.3d 1104, 1114-15 (Wyo. 2016).  When the City did not reinstate Mr. Vance after our 2016 decision, he filed a complaint against it seeking reinstatement and damages for breach of contract and violation of statutory duties.

[¶2]    On summary judgment, the district court ruled that Mr. Vance was entitled to reinstatement in 2016 and that he was entitled to damages for his wrongful termination and the City's failure to reinstate him.  The court further ruled that the only questions remaining for trial were the amount of damages and whether Mr. Vance took reasonable steps to mitigate those damages.  At trial, the jury awarded Mr. Vance damages of approximately $280,000, and the court entered a judgment on the verdict but denied Mr. Vance's post-trial motion for attorney fees, costs, and pre- and post-judgment interest.  Both parties appeal.[1]

[¶3]    We affirm the judgment on the verdict, which as a matter of law bears post-judgment interest.  We also affirm the denial of attorney fees and prejudgment interest.  We reverse the denial of costs and remand for proceedings consistent with this opinion.

## ISSUES

[¶4]    In its appeal, the City presents seven issues, which we restate as follows:

> 1.      Did the district court abuse its discretion when it ruled that Mr. Vance's claims were not barred for failure to exhaust his administrative remedies?
>
> 2.      Did the district court err when it ruled on summary judgment that Mr. Vance was entitled to damages for his wrongful termination and the City's failure to reinstate him in 2016?

---

[1] After filing his notice of appeal, Mr. Vance died, and Jennifer Hanft as personal representative of his estate was substituted as the party in interest.

1

3.      Did the district court's ruling on summary judgment and narrowing of the issues for trial violate the City's due process rights?

4.      Did the award of damages in this case constitute an impermissible donation or gratuitous payment of public funds in violation of the Wyoming Constitution?

5.      Did the district court err when it failed to instruct the jury on the City's affirmative defense of waiver?

6.      Did the district court err when it denied the City's W.R.C.P. 50(b) motion for judgment as a matter of law on the question of Mr. Vance's failure to mitigate his damages?

7.      Did the district court err when it excluded the City's evidence of other available firefighter jobs?

[¶5]    In her appeal, Ms. Hanft presents four issues, which we restate as follows:

1.      Did the district court err when it denied Mr. Vance's motion for attorney fees pursuant to Wyo. Stat. Ann. § 27-4-104(b)?

2.      Did the district court abuse its discretion when it denied Mr. Vance's motion for costs under W.R.C.P. 54(d)?

3.      Did the district court abuse its discretion when it denied Mr. Vance's motion for prejudgment interest?

4.      Did the district err when it failed to include post-judgment interest in its final judgment?

## FACTS

[¶6]    In *Vance*, we described the events that led to Mr. Vance's discharge and the proceedings that followed.

On December 5, 2012, Mr. Vance reported for work as a shift commander for the City's fire department and was notified that he had been randomly selected for alcohol detection testing. Two breathalyzer tests performed minutes apart detected a low level of alcohol in his blood stream. Mr.

2

Vance had previously been disciplined for testing positive for cocaine in 2010. Under the City's policies, a second drug or alcohol violation could result in discipline up to and including termination of employment. The City issued a disciplinary order discharging Mr. Vance from the fire department, and he requested a hearing before the Commission.

The Commission held an evidentiary hearing, applied the civil service rules and the City's personnel rules, and determined in Commission Decision # 1 that the reason for the City's discipline decision was "partially justified." It reduced the disciplinary action from discharge to a two-month unpaid suspension. The City petitioned the district court for review, and Mr. Vance cross-petitioned. The district court reversed Commission Decision # 1, concluding the legal standard applied by the Commission did not comply with Wyo. Stat. Ann. § 15-5-112(b) (LexisNexis 2015), which required the Commission to determine whether the reason for discharge was "sufficient and established" and did not authorize it to determine that the reason was "partially justified." The district court remanded the matter to the Commission for application of the correct standard.

The Commission considered the same evidentiary record and, in Commission Decision # 2, refused to consent to Mr. Vance's discharge. It ruled that the City's reason for discharging him was not sufficient and established because the breathalyzer tests did not comply with Department of Transportation (DOT) standards. The City petitioned the district court for review, and the court again reversed and remanded. The district court concluded the Commission's determination that the breathalyzer test results were invalid was not supported by the law or the evidence. The district court ordered the Commission to accept and consider the breathalyzer test results on remand. After deliberating the matter for a third time and in accordance with the district court's directive that it accept and consider the breathalyzer test results, the Commission ruled in Commission Decision # 3 that the City properly discharged Mr. Vance because he violated the policy that prohibits employees from being on duty with "any detectable" blood alcohol concentration.

3

Mr. Vance filed a petition for review, and the district court dismissed his petition because, instead of raising issues about the Commission's most recent decision, Mr. Vance challenged the district court's previous order requiring the Commission to accept and consider the breathalyzer results. Mr. Vance appealed to this Court. We requested additional briefing on whether the district court had jurisdiction to consider the City's petitions for review of Commission Decisions # 1 and # 2.

*Vance*, ¶¶ 6-9, 382 P.3d at 1105-06.

[¶7]   In ruling on the jurisdictional issue, which we found to be dispositive, we concluded:

Under the civil service statutes, Commission Decision # 2 refusing to consent to Mr. Vance's discharge was final and was not subject to judicial review. The district court did not have jurisdiction to consider the City's petition for judicial review. Consequently, its decision reversing and remanding Commission Decision # 2 is void and, hereby, vacated. In addition, all of the proceedings that followed Commission Decision # 2 were improper, meaning that Commission Decision # 3 and the district court's dismissal of Mr. Vance's petition for review of that decision are void and, hereby, vacated. Because the district court did not have jurisdiction over the matter, we, likewise, lack jurisdiction beyond determining that the district court had no jurisdiction to review Commission Decision # 2. *Rock v. Lankford*, 2013 WY 61, ¶ 18, 301 P.3d 1075, 1080 (Wyo. 2013), quoting *Hall v. Park Cnty.*, 2010 WY 124, ¶ 3, 238 P.3d 580, 581 (Wyo. 2010). This appeal is, therefore, dismissed.

*Vance*, ¶ 44, 382 P.3d at 1114-15.

[¶8]   We issued our decision in *Vance* on November 7, 2016. On December 12, 2016, the City, through its attorney, sent a letter to Mr. Vance's counsel, which stated:

The City understands Mr. Vance seeks re-employment with the Laramie Fire Department. The City is evaluating that request. As part of that evaluation, the City needs to determine whether Mr. Vance is eligible and fit for re-employment. In order to make that determination, Mr. Vance must undergo a

4

background (including driver's license) check, employment drug and alcohol test, and physical by the department doctor.

[¶9]   Mr. Vance completed the tasks outlined in the city attorney's letter to the City's satisfaction, but nonetheless the City did not reinstate him.  Instead, the city attorney sent another letter on March 13, 2017, which stated, "it has not been possible for the City to finish a review of your client's earlier request for re-employment (however it is characterized), as I have confirmed your client voluntarily retired some time ago."

[¶10]  Following its March 13, 2017 letter, the City did not seek additional information from Mr. Vance or reinstate him.  On August 3, 2017, Mr. Vance filed a notice of claim against the City, and on October 13, 2017, he filed his suit.  The complaint asserted claims for breach of contract, violation of statutory duties, and declaratory judgment, and it sought relief that included:

> A.      [M]onetary damages in an amount sufficient to compensate [Mr. Vance] for all of his losses incurred, past and future for [the City's] breach of contract and failure and refusal to allow [Mr. Vance] to return to his former position.
>
> * * * *
>
> D.      [A]n Order directing the City Manager of the City of Laramie to comply with the Final Order of the Civil Service Commission.

[¶11]  On September 7, 2018, the parties filed cross-motions for summary judgment. Relevant to this appeal, Mr. Vance moved for partial summary judgment on his claims that the City unlawfully refused to reinstate his employment retroactive to his December 2012 discharge, and that he was entitled to damages dating from December 2012, in an amount to be determined at trial.  The City sought rulings that Mr. Vance could not be reemployed while receiving retirement benefits, that he failed to mitigate his damages, that he was not entitled to overtime for hours that he did not work, and that the City was entitled to an offset for any retirement benefits Mr. Vance received while the litigation was pending.[2]

[¶12]  On November 13, 2018, the district court issued its order on the cross-motions for summary judgment.[3]  The court granted Mr. Vance summary judgment on his claim that he was entitled to reinstatement and damages.  It ruled (citations to the record omitted):

---

[2] Mr. Vance was eligible to take disbursements from his Wyoming Retirement System account when he turned fifty years old, and on March 5, 2015, he applied for those benefits, which he then received retroactively from December 1, 2014.

[3] On this same date, both parties provided the district court notice that the City had agreed to reinstate Mr. Vance to the position of division chief effective November 20, 2018.

5

Decision No. 2 states that the Commission did not consent to the termination of Mr. Vance. However, Decision No. 2 does not state that Mr. Vance is entitled to be reinstated as Shift Commander. Decision No. 2 simply states that the City did not have sufficient and established reasons to terminate Mr. Vance.

As such, the City was required to reinstate Mr. Vance to the Fire Department without reducing either his rank or his pay. However, following the Supreme Court decision in 2016, the City did not reinstate Mr. Vance, in any position. The City claims that Mr. Vance could not be hired while he was receiving retirement benefits. While, the Court addresses this contention below, the simple fact is that Mr. Vance was entitled to be reinstated to a position of equal pay and rank by the fire department and he was not, despite Mr. Vance's attempts to be so reinstated. Therefore, the Court finds that summary judgment is appropriate on this matter. Thus, Mr. Vance's motions for summary judgment on the issue that the City failed to reinstate him following the Supreme Court's decision in *Vance*, is hereby granted.

Additionally, Mr. Vance seeks a finding that he is entitled to damages as a result of the City's failure to reinstate him. Having found that the City failed to properly terminate Mr. Vance and then failed to reinstate him, the Court finds that damages are appropriate on this issue. The amount of damages shall be determined by a jury following trial.

[¶13]  The district court granted the City summary judgment on its claim that Mr. Vance was not entitled to overtime for hours that he did not work and on its claim that it was entitled to an offset of two-thirds of the retirement benefits Mr. Vance received as those were its contributions.  The court denied the City's motion for summary judgment as to its claims that Mr. Vance could not be reinstated while receiving retirement benefits and that he failed to mitigate damages.  It found that while Mr. Vance was required to make certain elections concerning his retirement benefits, the election was one that had to be made to the retirement board and did not concern the City.  It thus concluded that Mr. Vance's receipt of retirement benefits was not a basis for the City to withhold or delay his reinstatement.

[¶14]  As to the City's claim that Mr. Vance failed to mitigate his damages, the district court ruled:

6

In the present case, the Court finds that reasonable minds could find that Mr. Vance's failure to apply for any comparable employment openings, or even be aware of their existence, is a failure to mitigate. However, reasonable minds could also find that collecting retirement benefits at Mr. Vance's age is a reasonable effort to mitigate damages. As such, reasonable minds could differ with respect to Mr. Vance's efforts to mitigate. Therefore, summary judgment is not appropriate on this issue. Thus, the City of Laramie's motion for summary judgment is denied with regards to Mr. Vance's failure to mitigate damages.

[¶15] On September 3, 2019, the district court held a final pretrial conference. The court noted that it had already ruled Mr. Vance was entitled to be reinstated and that the City failed to do so. It then stated:

So that's how the Court is ruling on these outstanding issues. So it's the Court's position that we're going next week to truly do a case to a jury of damages and what those damages should look like and that the plaintiff may introduce evidence from all of the successive collecting – collective bargaining agreements.

[¶16] A jury trial was held from September 9 through 11, 2019. When Mr. Vance rested, the City made a W.R.C.P. 50(a) motion for judgment as a matter of law. It asserted that it was entitled to judgment without submitting the case to the jury on the grounds that Mr. Vance: 1) failed to prove a basis for his damages claim; 2) failed to exhaust his administrative remedies; and 3) was requesting an unconstitutional donation of public funds. The district court took the motion under advisement.

[¶17] The jury returned a verdict that awarded Mr. Vance approximately $280,000 for lost wages, lost benefits, and out-of-pocket costs for health insurance. On September 30, 2019, Mr. Vance moved for an award of pre- and post-judgment interest, attorney fees, and costs. On October 9, 2019, the City filed a W.R.C.P. 50 motion for judgment as a matter of law or alternatively for a new trial. In support, it asserted the same three grounds it asserted in its pre-verdict motion and added four additional claims: 1) Mr. Vance failed to exhaust his administrative remedies; 2) the district court's summary judgment ruling violated its due process rights; 3) Mr. Vance failed to establish a basis for damages; 4) the court was required to recognize the parties' stipulation as to damages or alternatively grant a new trial with instructions to the jury on waiver; 5) the damages award violated the Wyoming constitution's prohibition on the donation of public funds; 6) the evidence required a

7

verdict in the City's favor on Mr. Vance's failure to mitigate his damages; and 7) the court erred in excluding the City's mitigation evidence.

[¶18]   On November 15, 2019, the district court entered judgment on the jury's verdict and an order denying Mr. Vance's motion for interest, attorney fees, and costs.  On December 6, 2019, it entered an order denying the City's W.R.C.P. 50 motion, followed on December 9, 2019 by a corrected judgment to reflect the award for out-of-pocket health insurance costs.  Both parties timely appealed.

## DISCUSSION

### I.     Appeal No. S-20-0069: City of Laramie's Appeal

### A.     Exhaustion of Administrative Remedies

[¶19]   Shortly before the final pretrial conference, the City filed a legal memorandum in which it asserted that Mr. Vance's claims for reinstatement and breach of contract were barred because he failed to exhaust his administrative remedies by first seeking relief from the Commission.  Although the district court declined to consider the City's exhaustion argument before trial, it considered and rejected the argument when the City raised it again in its post-trial motion.  The court reasoned that Mr. Vance "is at this stage because he exhausted his administrative remedies regarding reinstatement with the fire department all the way to the Wyoming Supreme Court."

[¶20]   A district court has discretion to decline jurisdiction over a claim for which a party has failed to exhaust his administrative remedies.  *Devon Energy Prod. Co., LP v. Grayson Mill Operating, LLC*, 2020 WY 28, ¶ 12, 458 P.3d 1201, 1205 (Wyo. 2020) (citing *Thomas Gilcrease Found. for Gilcrease Hoback One Charitable Trust v. Cavallaro*, 2017 WY 67, ¶ 10, 397 P.3d 166, 169-70 (Wyo. 2017)).  We thus review a district court's ruling on a failure to exhaust defense for an abuse of discretion.  *Id*.

[¶21]   Under the exhaustion doctrine, "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Devon Energy*, ¶ 32, 458 P.3d at 1210 (quoting *People v. Fremont Energy Corp.*, 651 P.2d 802, 811 (Wyo. 1982)).  The doctrine "applies where an agency alone has been granted or found to possess exclusive jurisdiction over the case."  *Devon Energy*, ¶ 32, 458 P.3d at 1211 (quoting *Fremont Energy*, 651 P.2d at 811).  In the context of employment disputes, we have held that the availability of an administrative remedy will not necessarily raise exhaustion concerns.  *Metz v. Laramie Cnty. Sch. Dist. No. 1*, 2007 WY 166, ¶ 52, 173 P.3d 334, 348 (Wyo. 2007).  The controlling question is whether the procedure is mandatory.  *Id*.

[¶22] For example, in *Metz*, former school district employees filed an action against the district that asserted claims for breach of contract, among others. *Metz*, ¶ 1, 173 P.3d at 336. The parties' employment contract contained a detailed grievance procedure to address disputes "arising from interpretations or applications of contract terms, District policies and/or regulations." *Id.* ¶ 42, 173 P.3d at 345-46. That procedure included the following provision:

> Any employee . . . who considers that he has been discharged
> or disciplined without proper cause . . . shall have the right to
> appeal such discharge in accordance with the provisions of the
> grievance procedure set forth in this agreement.

*Metz*, ¶ 43, 173 P.3d at 346.

[¶23] The district court dismissed the employees' breach of contract claim because they failed to exhaust the administrative remedy made available by the grievance procedure. We reversed, explaining:

> In the context in which it appears . . ., the word "right" does
> not suggest a grievance was mandatory. The provision does not
> state that a discharged employee "must" or "is required" to file
> a grievance . . . . Instead, the agreement provides an employee
> "shall have the right" to file a grievance, a usage suggesting a
> choice on the part of the employee. Had LCSD intended to
> make the filing of a grievance mandatory or to require
> employees to exhaust the grievance procedures or be barred
> from filing a claim in court, it could have clearly stated that
> intent in the agreement. We hold that the appellants' failure to
> appeal their discharge by filing a grievance did not preclude
> them from filing a breach of contract claim in court.

*Metz*, ¶ 48, 173 P.3d at 347.

[¶24] In *Glover v State*, we reached the opposite conclusion and upheld a district court's decision to decline jurisdiction over an employee's breach of contract complaint. 860 P.2d 1169, 1170 (Wyo. 1993). We did so based on the exclusive jurisdiction granted the state agency charged with hearing personnel appeals and the mandatory nature of the applicable rules, which provided as follows:

> "The Hearing Authority shall have original jurisdiction in all
> hearings which involve the dismissal or the reduction in force
> of a permanent employee." Personnel Rules of the Executive
> Branch of Wyoming State Government ch. XII, § 2(f) (1989).

9

*See also id.* Appendix, Definition No. 33.

> Additionally, the personnel rules provided that an employee could file a petition for review within twenty days after he had received a notice of dismissal. However, "[i]f an employee does not petition for review within the time prescribed, there shall be no other or further right to appeal, and the dismissal or the reduction in force shall stand." *Id.* ch. XII, § 7(a)

*Glover*, 860 P.2d at 1173.

[¶25]  The City cites to no similar mandatory and specific procedure.  It instead points to this Court's statement in *Vance* that the Commission "is, in all respects, the final decision maker for the city on department employment matters." *Vance*, ¶ 31, 382 P.3d at 1111.  It argues that this recognition of the Commission's authority meant that Mr. Vance was required to avail himself of the remedy found in the following provision in the civil service rules:

> Section 1.    <u>Procedure for Investigation</u>. Whenever the Commission receive[s] information that there has been a breach of its rules, it shall cause an investigation to be made and shall enter a written finding as to the alleged violation and take appropriate action, including but [not] limited to the entry of a written order to the violator to refrain from further violations.

Fire Department Civil Service Rules – Revision 1998, Chapter XIV, § 1.[4]

[¶26]  While the cited rule may arguably provide an employee the opportunity to request Commission action on a perceived rule violation, nothing in the rule mandates that an employee make such a request.  The rule therefore did not create an administrative remedy that Mr. Vance was required to exhaust before seeking a judicial remedy for the City's wrongful discharge and failure to reinstate him.

[¶27]  The City's reliance on our observations in *Vance* is equally unavailing.  In context, our concern was with the City's right to appeal from a Commission decision with which it disagreed.  *Vance*, ¶ 31, 382 P.3d at 1111-12.  In holding that the City had no such right, we stated:

---

[4] Because it does not affect our analysis, we assume without deciding that the absence of the word "not" from the rule was a typographical error.

10

The statutory scheme demonstrates that the commission is not an independent agency that reviews the city's final employment decision; instead, it plays an integral role in making employment decisions. The commission is, in all respects, the final decision maker for the city on department employment matters. The commission's action is, in effect, the city's action.

*Id.* ¶ 31, 382 P.3d at 1111.

[¶28]   The administrative remedies available to an employee were not at issue in *Vance*, and we therefore did not address that question or any question of exhaustion.  Notably we recognized that Commission Decision # 2 was the Commission's final decision because the City had no right to challenge it.  *Vance*, ¶ 44, 382 P.3d at 1114.  That decision stated as follows (emphasis in original):

> 7.      By unanimous vote of the Commission, it **is hereby determined** that the reasons for the discharge of Shift Commander Bret Vance by DISCIPLINARY ORDER effective December 14, 2012, **were not sufficient and established**, and that, therefore, **the Commission does not consent to the discharge**.
>
> 8.      In accordance with Wyo. Stat. §15-5-112(b), this decision shall be certified to the City Manager for enforcement in accordance with law and with the City of Laramie FIRE DEPARTMENT CIVIL SERVICE RULES.

[¶29]   "The 'purpose of the exhaustion doctrine is to avoid premature interruption of the administrative process where the agency has been created to apply a statute in the first place.'" *Devon Energy*, ¶ 31, 458 P.3d at 1210 (quoting *Thomas Gilcrease Found.*, ¶ 12, 397 P.3d at 170).  We have further explained that

> it is normally desirable to let the agency develop the necessary factual background upon which decisions should be based. And since agency decisions are frequently of a discretionary nature or frequently require expertise, the agency should be given the first chance to exercise that discretion or to apply that expertise. And of course it is generally more efficient for the administrative process to go forward without interruption than it is to permit the parties to seek aid from the courts at various intermediate stages.

11

*Glover*, 860 P.2d at 1172 (quoting *McKart v. United States*, 395 U.S. 185, 193-94, 89 S.Ct. 1657, 1662-63, 23 L.Ed.2d 194 (1969)).

[¶30]   The Commission made its final decision when it issued Commission Decision # 2. All that remained was for the City to comply with and implement that decision.  It stands to reason that a judicial action to compel that compliance could in no way interrupt the Commission's fact finding, use of its expertise, or exercise of its discretion.  We therefore find no abuse of discretion in the district court's rejection of the City's exhaustion claim.[5]

## B.   Basis for Relief

[¶31]   In his complaint, Mr. Vance asserted claims against the City for breach of contract and violation of the civil service statutes.  The City asserts that Mr. Vance has identified no contract or statutory provision that entitled him to be paid wages during periods that he did not work.  It contends that he therefore failed to state a claim for damages and that the district court erred in ruling on summary judgment that he was entitled to them.

[¶32]   We review a district court's grant of summary judgment de novo.

> We review a district court's order granting summary judgment de novo and afford no deference to the district court's ruling. *Thornock v. PacifiCorp*, 2016 WY 93, ¶ 10, 379 P.3d 175, 179 (Wyo. 2016). This Court reviews the same materials and uses the same legal standard as the district court. *Id.* The record is assessed from the vantage point most favorable to the party opposing the motion . . ., and we give a party opposing summary judgment the benefit of all favorable inferences that may fairly be drawn from the record. *Id.* A material fact is one that would have the effect of establishing or refuting an essential element of the cause of action or defense asserted by the parties. *Id.*

---

[5] The fact that Mr. Vance was drawing retirement benefits when this Court issued its 2016 decision in *Vance* does not change this result.  The Commission's only role with respect to retirement benefits is to determine whether a fire department employee must retire at age sixty or is fit to serve until age sixty-five. *See* Wyo. Stat. Ann. § 15-5-112(d) (LexisNexis 2019).  Questions concerning the effect of retirement benefits on eligibility for employment and the elections that must be made are governed by different statutes and are under the authority of the retirement board. *See* Wyo. Stat. Ann. § 15-5-201 *et seq.* (LexisNexis 2019) (administration of firemen's pension account); Wyo. Stat. Ann. § 9-3-401 *et seq.* (LexisNexis 2019) (Wyoming Retirement Act); Wyo. Stat. Ann. § 9-3-415(g) (LexisNexis 2019) (elections that must be made to retirement board by rehired member).  Mr. Vance did not need to seek a ruling from the Commission on the City's retirement benefit question.

*Candelaria v. Karandikar*, 2020 WY 140, ¶ 11, 475 P.3d 548, 551 (Wyo. 2020) (quoting *Varela v. Goshen County Fairgrounds*, 2020 WY 124, ¶ 12, 472 P.3d 1047, 1052 (Wyo. 2020)).

[¶33] Members of the Laramie Fire Department work under a collective bargaining agreement (CBA) that the City and the firefighters' union negotiate annually. While the CBA sets "wages, working conditions, and other pertinent matters of employment," it does not address a member's right to continued employment. That is instead addressed by the civil service statutes, which provide in relevant part:

> (a) All persons occupying positions affected by this article may retain their positions until discharged or reduced in grade under its provisions.
>
> (b) Discharge from a department, or reduction in grade or compensation, or both, may be made for any cause, not political or religious, which will promote the efficiency of the service, on written notice and specifications filed with the commission and served upon the person affected by the authority requesting the discharge or reduction. The person whose discharge or reduction is sought is allowed a reasonable time to answer the charges in writing and demand a hearing. The commission, after hearing or investigation, shall determine whether the reason for discharge or reduction is sufficient and established. . . . [N]o person may be discharged or reduced in pay or rank without consent of the commission after a hearing, unless the action is pursuant to a classification program under W.S. 15-5-106.

Wyo. Stat. Ann. § 15-5-112.[6]

[¶34] In its summary judgment ruling, the district court found that the Commission did not authorize Mr. Vance's termination and that the City had no grounds to refuse his request for reinstatement. It thus concluded that Mr. Vance was entitled to damages in an amount to be determined by a jury. Although the court did not identify the basis for Mr. Vance's recovery, we may affirm on any basis supported by the record. *Prancing Antelope I, LLC v. Saratoga Inn Overlook Homeowners Ass'n, Inc.*, 2021 WY 3, ¶ 41, 478 P.3d 1171, 1182

---

[6] The Fire Department Civil Service Rules address a member's right to continued employment in a manner that is consistent with Wyo. Stat. Ann. § 15-5-112. Additionally, the CBA incorporates the Employee Handbook of the City of Laramie. The record contains only the handbook provisions setting the City's drug and alcohol policy and governing employee conduct, but we know in any event that no provision of the handbook or the civil service rules may contravene the substantive protections of the civil service statutes. *See Mondt v. Cheyenne Police Dep't*, 924 P.2d 70, 73 (Wyo. 1996).

(Wyo. 2021) (citing *Black Diamond Energy of Delaware, Inc. v. Wyoming Oil & Gas Conservation Comm'n*, 2020 WY 45, ¶ 45, 460 P.3d 740, 753 (Wyo. 2020)). We have also said:

> [An] appellate court may affirm a trial court ruling, even though the trial court's legal reasoning for the ruling was erroneous, if (1) the facts in the record are sufficient to support a proffered alternative basis, (2) the trial court's ruling is consistent with the view of the evidence under the alternative basis, and (3) the record is materially the same as would have been developed had the prevailing party raised the alternative basis for affirmance below.

*Prancing Antelope*, ¶ 41, 478 P.3d at 1182 (quoting 5 Am. Jur. 2d *Appellate Review* § 630, at 461 (2018)); *see also Karn v. Hayes*, 530 P.2d 156, 158 (Wyo. 1975) ("The fact . . . that the parties proceeded under a misapprehension as to the proper theory of the case does not deprive the trial court of jurisdiction to render a judgment which the pleadings and proof in fact support.").

[¶35] "[W]e recognize a contract in every employment situation." *Ormsby v. Dana Kepner Co. of Wyo., Inc.*, 997 P.2d 465, 471 (Wyo. 2000); *see also McLean v. Hyland Enter., Inc.*, 2001 WY 111, ¶ 42, 34 P.3d 1262, 1272 (Wyo. 2001) ("The employment relationship is a relationship based in contract."). In Wyoming, employment is presumed to be at will, but that presumption may be modified by either an express or an implied contract. *Trabing v. Kinko's, Inc.*, 2002 WY 171, ¶ 10, 57 P.3d 1248, 1252 (Wyo. 2002) (citing *Worley v. Wyoming Bottling Co., Inc.*, 1 P.3d 615, 620 (Wyo. 2000)).

[¶36] "An express contract for continued employment exists when the terms of the agreement are declared by the parties in writing or verbally." *Ormsby*, 997 P.2d at 469 (quoting *Boone v. Frontier Refining, Inc.*, 987 P.2d 681, 685 (Wyo. 1999)). An implied contract for continued employment exists when objective evidence shows that the employer intended to include job security as part of the contract. *Worley*, 1 P.3d at 620-21 (citing *Terry v. Pioneer Press, Inc.*, 947 P.2d 273, 275 (Wyo. 1997)). An employment handbook, personnel policies, letters of employment, performance evaluations and an employer's course of dealing may supply the terms of an implied contract. *Worley*, 1 P.3d at 621 (quoting *Bear v. Volunteers of America, Wyoming, Inc.*, 964 P.2d 1245, 1250 (Wyo. 1998)). Of particular relevance here, "a right to continued employment can be created by statute, rules and regulations enacted pursuant to statute, or by rules and regulations having the force of a contract." *Glover*, 860 P.2d at 1172 (quoting *Chasson v. Community Action of Laramie County, Inc.*, 768 P.2d 572, 575 (Wyo. 1989)).

[¶37] Express and implied contracts of employment are enforceable to the same degree. *Trabing*, ¶ 10, 57 P.3d 1252 (quoting *Wilder v. Cody Country Chamber of Commerce*, 868

14

P.2d 211, 216-17 (Wyo. 1964)). Additionally, both may co-exist as long as the implied contract does not contradict the express contract. *Trabing*, ¶ 13, 57 P.3d at 1253 (citing 42 C.J.S. *Implied Contracts* § 34 (1991)).

[¶38] In this case, the record supports a finding that Mr. Vance had both an express and an implied employment contract with the City. His express contract was the CBA, which governed certain terms of his employment, such as wages, benefits, and working conditions, but did not address his right to continued employment. Wyo. Stat. Ann. § 15-5-112(a)-(b) created his implied contract by providing a right to continued employment and discharge only for cause. *See Gardner v. Nation*, 522 P.2d 1281, 1283 (Wyo. 1974) (section 112(b)'s language that permits discharge "for any cause, not political or religious, which will promote the efficiency of the service, . . . connotes a charge that the person sought to be removed has in some way failed to carry out the functions of his employment"); *see also Mondt*, 924 P.2d at 80 (civil service statutes create "for cause" employment for police officers).

[¶39] Although Mr. Vance did not expressly plead breach of an implied contract in his complaint, he did plead that Wyo. Stat. Ann. § 15-5-112 gave him a right to continued employment and that the City violated that statutory right. That is the basis for the implied employment contract between him and the City, and we are thus satisfied that in substance he adequately pled and put the City on notice of the claim. *See Acorn v. Moncecchi*, 2016 WY 124, ¶ 66, 386 P.3d 739, 759 (Wyo. 2016) (W.R.C.P. 8 requires only "that a plaintiff 'plead the operative facts involved in the litigation so as to give fair notice of the claim to the defendant'") (quoting *Ridgerunner, LLC v. Meisinger*, 2013 WY 31, ¶ 12, 297 P.3d 110, 114 (Wyo. 2013)). Additionally, the record is materially the same as it would have been had Mr. Vance gone a step further in his complaint and asserted that the City's violation of section 112(a) was a breach of his implied employment contract. *See Prancing Antelope*, ¶ 41, 478 P.3d at 1182. There is simply nothing the City could have argued or brought in the way of evidence to rebut the statutorily created contract.[7]

_____

[7] The City points to the following statements by Mr. Vance's counsel during the trial as a concession that Mr. Vance did not state a claim for breach of contract:

> [PLAINTIFF'S COUNSEL]: Your Honor, there is the other major point that needs to be taken care of by the Court. This claim is one that is both statutory and breach of contract to a lesser degree. This is a claim under the statutory duty to continue the plaintiff's employment. He was not appropriately discharged. And it's not a breach of contract case.
>
> The contract element of this case is only because the Collective Bargaining Agreements provide for the terms of how much. Not – the jury should be instructed, as the Court has already found, that Mr. Vance was entitled to be employed throughout the entirety of this period of time.

15

[¶40] The next question then is whether the record supports a finding that the City breached its implied contract with Mr. Vance, which would provide the basis for the district court's ruling that he was entitled to damages. We have said:

> Ordinarily, in implied employment contract cases, a breach of contract is established by the employer's failure to follow the procedures contained in the handbook, by a showing there was no cause for termination, or by both.

*Sheaffer v. State ex rel. Univ. of Wyo.*, 2009 WY 19, ¶ 42, 202 P.3d 1030, 1042 (Wyo. 2009) (quoting *Life Care Centers of America, Inc. v. Dexter*, 2003 WY 38, ¶ 11, 65 P.3d 385, 391 (Wyo. 2003)).

[¶41] In its Decision # 2, the Commission determined that the City's reasons for Mr. Vance's discharge were not sufficient and established. Additionally, the district court ruled that Mr. Vance's receipt of retirement benefits did not provide a basis for the City to refuse or delay Mr. Vance's request for reinstatement, a ruling that the City has not appealed. The record thus supports a finding that the City breached its implied contract with Mr. Vance by wrongfully terminating his employment and failing to reinstate him in accordance with the Commission's decision. That being the case, the record also supports the district court's ruling on summary judgment that he was entitled to an award of damages.

[¶42] The City's argument that Mr. Vance has no claim for damages because he can point to no contract term or statute that entitles him to pay when he has not worked is entirely without merit. We have said:

> The measure of damages for breach of contract is that which would place plaintiff in the same position as he would have been had the contract been performed, less proper deductions. In a suit for breach of an employment contract, then, the damages are the amount of compensation agreed upon for the

---

. . . [H]e was entitled as a matter of law – not as a matter of any point in the contract that we have to specifically point to to continue that employment. The Court has made that ruling.

We don't need to have more argument before the jury about where that is in the contract. We are not here for that purpose anymore. That has already been determined.

We do not view counsel's statements as a concession. What he argued, just as what he pled, is in substance an implied contract claim. As we noted above, a party's misapprehension of his claim does not deprive a court of jurisdiction to render a judgment that the pleadings and proof in fact support. *Karn*, 530 P.2d at 158.

remainder of the period involved less the amount which the employee earned or with reasonable diligence could have earned from other employment.

*Dubrowski v. State ex rel. Wyo. Liquor Comm'n*, 1 P.3d 631, 634 (Wyo. 2000) (quoting *Panhandle Eastern Pipe Line Co. v. Smith*, 637 P.2d 1020, 1025 (Wyo. 1981)); *see also* 82 Am. Jur. 2d *Wrongful Discharge* § 224 (Nov. 2020 update) ("A wrongfully discharged employee may generally recover monetary damages in compensation for wrongful termination, consisting of lost earnings—which includes lost wages, salary, and commissions . . . ."); *see also Mondt*, 924 P.2d at 83 (suspension of police officer without adherence to hearing requirements must be removed from record and officer must be compensated for pay she was denied).

[¶43] It is nonsensical to suggest that a party seeking to recover for breach of an employment contract must identify a contract term that allows him pay for not working. Damages for a wrongful termination include lost earnings, and if a plaintiff proves a breach of contract, as Mr. Vance did in this case, he is entitled to an award that includes lost earnings, with proper adjustments.

## C. Due Process

[¶44] The City next contends that because Mr. Vance did not move for summary judgment on his entitlement to damages, the district court erred when it ruled on the question. More particularly, it claims that since Mr. Vance's motion did not seek a ruling on his entitlement to damages, the City did not have notice and an opportunity to argue the question before the court ruled, and the ruling thus violated its right to due process.

[¶45] Whether a party was afforded due process is a question of law that we review de novo. *Matter of NRAE*, 2020 WY 121, ¶ 12, 472 P.3d 374, 377 (Wyo. 2020). We have explained:

> The party claiming an infringement of his right to due process has the burden of demonstrating both that he has a protected interest and that such interest has been affected in an impermissible way. The question is whether there has been a denial of fundamental fairness.

*Brush v. Davis*, 2013 WY 161, ¶ 16, 315 P.3d 648, 653 (Wyo. 2013).

[¶46] "Notice and the opportunity to be heard 'are unquestionably incidental to affording due process of law.'" *NRAE*, ¶ 17, 472 P.3d at 379 (quoting *In re Guardianship of MEO*, 2006 WY 87, ¶ 34, 138 P.3d 1145, 1156 (Wyo. 2006)). The City has not, however, met its

burden of showing that it was deprived of notice and the opportunity to be heard by the district court's summary judgment ruling.

[¶47]   Mr. Vance's memorandum in support of partial summary judgment stated (emphasis added):

> Mr. Vance seeks a partial summary judgment under the Act declaring as void the City of Laramie's illegal decision to reassign him to a position as Division Chief, thereby reducing his compensation and failing to provide him with notice and an opportunity to be heard, as required by W.S. § 15-5-112(b). Mr. Vance also seeks a partial summary judgment under the Act declaring that ***the City of Laramie owes him damages, in an amount to be determined at trial, for refusing to reinstate him as a Shift Commander, effective December 5, 2012, as required by [Vance], and the Commission's Decision #2.***

[¶48]   On page one of the City's response to Mr. Vance's motion, it stated (emphasis added):

> Vance moves for summary judgment regarding:
>
> (i)      Vance's eligibility to be rehired while Vance remains retired and collects retirement benefits;
>
> (ii)     Vance's March of 2014 rehire as a Division Chief;
>
> (iii)    Vance's claim for overtime compensation for overtime hours Vance never worked; and
>
> (iv)     ***Vance's alleged entitlement to damages***.

[¶49]   Later in its response, the City argued, among other things, that "Vance wholly fails to establish the City breached the CBA, failed to comply with the Civil Service Commission's decisions, or failed to comply with the Wyoming Supreme Court's order." Mr. Vance's motion plainly sought a ruling that he was entitled to damages, and it is apparent from the City's response that it understood and responded to the claim. We therefore find no due process violation in the district court's summary judgment ruling on the question.

18

**D.    Constitutionality of Damages Award**

[¶50] In its motion for judgment as a matter of law, the City argued that because the damages awarded to Mr. Vance included wages and employment benefits for times that he did not work, they amounted to a gift of public funds in violation of Article 16, Section 6 of the Wyoming Constitution. The district court found that the damages award was a proper claim against the City, not a gift, and it thus rejected the argument. Since this presents a question of constitutional interpretation, our review is de novo. *Matter of Adoption of MAJB*, 2020 WY 157, ¶ 9, 478 P.3d 196, 200 (Wyo. 2020) (quoting *MH v. First Jud. Dist. Ct. of Laramie Cnty.*, 2020 WY 72, ¶ 4, 465 P.3d 405, 407 (Wyo. 2020)).

[¶51] Article 16, Section 6 provides that "[n]either the state nor any county, city, township, town, school district, or any other political subdivision, shall . . . [l]oan or give its credit or make donations to or in aid of any individual, association or corporation, except for necessary support of the poor." Wyo. Const. Art. 16, § 6(a)(i). This Court has stated that if public funds are used to pay a just claim against a governmental entity, that payment is not considered a gift or donation in contravention of Article 16, Section 6. *State v. Carter*, 30 Wyo. 22, 215 P. 477, 479 (1923).

[¶52] As we discussed above, Mr. Vance was not paid for hours he did not work. He was awarded damages for the breach of contract claim he proved against the City, and lost earnings and benefits were a proper component of those damages. The district court therefore did not err when it rejected the City's argument.

**E.    Waiver Instruction**

[¶53] In its post-trial motion, the City argued it was entitled to a judgment limiting damages to $31,786.30 based upon its alleged stipulation with Mr. Vance. Alternatively, it requested a new trial with the jury instructed on the City's waiver defense. The district court denied the City's motion both because it did not request a waiver instruction separate from the questions included in its proposed verdict form and because the evidence did not support the instruction. The court did not otherwise rule on the alleged stipulation.

[¶54] We will begin with what we know from the record concerning the background and substance of the stipulation. We will then turn to whether the district court erred in failing to limit Mr. Vance's damages in accordance with the stipulation or in failing to instruct the jury on the City's waiver defense.

**1.    Background and Substance of the Stipulation**

[¶55] Counsel for the City made what appears to be a deliberate decision not to offer the purported stipulation into evidence.

> [PLAINTIFF'S COUNSEL]: Your Honor, I'm going to have to ask about whether something was offered or admitted, but there was a stipulation but it was never referred to by number or anything.
>
> [DEFENSE COUNSEL]: I didn't offer it.

[¶56] Although the written stipulation is not in the record, the record contains the City's petition for judicial review of Commission Decision # 2, and that petition details how the stipulation came to be and what it covered.[8] In its petition, the City requested a stay in which it asserted as follows:

> 19. In [Commission Decision # 2], [the Commission] did not identify any specific relief Vance was entitled to pursuant to its Decision. However, the City has interpreted the Decision as requiring that Vance be reinstated to his position with the City, and that he should be entitled to lost wages and benefits he would have received had he not been terminated during the pertinent time periods.
>
> 20. Vance has been reinstated to his position during the pendency of this Petition for Review. However, if he is paid the wages and benefits he did not receive during the time he was terminated, and [Commission Decision # 2] is overturned, the City is concerned it will have no way of recovering those funds.

---

[8] The filings were not admitted into evidence at trial but were attached to Mr. Vance's pretrial memorandum on issues of law. We have said:

> Although we do not disregard this court's general power to take judicial notice, *Weber v. Johnston Fuel Liners, Inc.*, Wyo., 540 P.2d 535 (1975), we now establish two requirements for judicial notice of prior court proceedings in order to insure a proper record for appellate review. First, written notice must be given to the trial court so that it is clear what matters the trial court had the opportunity to consider; and second, judicially noticed documents must be physically included as part of the record filed on appeal, or must be on file at the Supreme Court as the result of a different proceeding. *Slepian v. Slepian*, Ala.App., 355 So.2d 714 (1977), *cert. denied* 355 So.2d 717 (1978). *Compare Hickey v. Burnett*, *supra*, 707 P.2d [741] at 744 [(Wyo. 1985)], and particularly fn. 4.

*Cockreham v. Wyo. Prod. Credit Ass'n*, 743 P.2d 869, 872-73 (Wyo. 1987); *see also* 2 McCormick on Evid. § 330 (8th ed. Jan. 2020 update) ("It is settled, of course, that the courts, trial and appellate, take notice of their own respective records in the present litigation, both as to matters occurring in the immediate trial, and in previous trials or hearings.") (footnote omitted).

21. Therefore, the City respectfully requests that this Court enter a stay during the pendency of the proceeding, find that the City should not have to pay back wages and benefits to Vance unless [Commission Decision # 2] is upheld. The total liability to the City for this amount is $65,770.37; however, the amount Vance would actually receive is $31,786.30. Exhibit 4, Jennifer Wade, Accounting Manager, March 25, 2014 Memorandum.

[¶57] The exhibit referenced in and attached to the City's request for a stay showed that the $31,786.30 was intended to cover two periods for which the City at that time acknowledged Mr. Vance was entitled to back wages and benefits: December 15, 2012 to February 6, 2013, and October 1, 2013 to March 13, 2014. Through counsel, Mr. Vance stipulated to the stay, and the district court granted the stay.

[¶58] As to the substance of the stipulation, the only evidence at trial came in through the testimony of Mr. Vance.

> Q. And during the course of time that you were going through the legal process back and forth as we talked about, you authorized your lawyer to enter into an agreement with the City as to how much money you would be paid if you were ultimately reinstated. Do you recall that?
>
> A. I don't – I would have to see that.
>
> * * * *
>
> Q. For right now – and take a look at this and see if it refreshes your recollection.
>
> A. It does.
>
> Q. And so if this refreshes your recollection, you authorized your lawyer to enter into an agreement that if you were reinstated, the City would pay you $31,786.30, right?
>
> A. That's correct.
>
> Q. And you told your lawyer it was okay to make that agreement on your behalf, right?

21

A. I did.

Q. And you understand that as the judge told the jury here today that when parties make a stipulation, it binds them, right?[9]

A. I do.

Q. So the only written agreement we have about what Mr. Vance should be paid if he was ultimately reinstated is this stipulation, right?

A. That's the only one I know of.

\* \* \* \*

Q. And the fact is – just while we are on it, the stipulation is not limited in time for how long it might take you to get reinstated, correct?

A. I don't see any limitation, no.

## 2. **Enforceability of Stipulation**

[¶59] Concerning stipulations, we have said:

> A stipulation is "an agreement, admission, or concession made in a judicial proceeding by the parties or their attorneys, respecting some matter or incident thereto." 73 Am. Jur. 2d *Stipulations* ¶ 1 (2016). Parties may stipulate to certain facts to avoid the delay, trouble and expense associated with proving them, and courts encourage stipulations to narrow issues to be proven at trial and promote judicial economy. *Id*. A stipulation "prevents an independent examination by a judicial officer or body with respect to the matters stipulated." 73 Am. Jur. 2d *Stipulations* § 17 (2016). Consequently, stipulations of facts are ordinarily "controlling and conclusive and courts are bound to enforce them, and they have no power to make findings contrary to the terms of the stipulation." *Id*.

---

[9] The district court instructed the jury, "To save time, attorneys sometimes stipulate, that is agree, that certain things are true. You will be told of any stipulated facts and must accept them as proved." The stipulation was not among the undisputed facts the court outlined in its instructions.

*See also Watkins v. Lake Charles Memorial Hosp.*, 144 So.3d 944, 957 (La. 2014) ("A stipulation has the effect of a judicial admission or confession, which binds all parties and the court."). In *Stringer v. Miller* (*In re Stringer's Est.*), 80 Wyo. 389, 343 P.2d 508, 512 (1959), this Court admonished the trial court for ignoring a stipulation. We stated that "[t]he court was not privileged to ignore the stipulation of the parties" as to which will was valid. *Id*.

*Jackman Constr., Inc. v. Rock Springs Winnelson Co., Inc.*, 2016 WY 118, ¶ 32, 385 P.3d 311, 320 (Wyo. 2016).

[¶60]  "While a stipulation need not follow any particular form, its terms must be definite and certain in order to afford a basis for judicial decision[.]" *State v. Buddington*, 707 S.E.2d 655, 657 (N.C. Ct. App. 2011) (quoting *State v. Alexander*, 616 S.E.2d 914, 917 (N.C. 2005)); *see also* 73 Am. Jur. 2d *Stipulations* § 18 (Feb. 2021 update) ("The scope and operation of a stipulation as to the facts may be limited by its own terms and provisions and in any case should not be extended beyond what the parties clearly intended.") (footnotes omitted).

[¶61]  The City's evidence of the parties' stipulation falls far short of establishing a definite and certain agreement, or a clear intention on the part of Mr. Vance, to limit any and all damages.  Mr. Vance's testimony did not identify the periods of lost wages that the $31,786.30 was intended to cover, but given the circumstances surrounding the stipulation, it is disingenuous at best for the City to suggest that it was intended to fully compensate Mr. Vance for any period of work he lost pending the appeals and the City's reinstatement of him.  Because the City failed to prove the terms of the asserted stipulation, the district court did not err in refusing to limit Mr. Vance's damages accordingly.

## 3.  <u>Waiver Instruction</u>

[¶62]  During the instructions conference, counsel for the City asked the district court to include questions on the verdict form that instructed the jury on waiver and asked it to answer yes or no as to whether Mr. Vance waived his right to claim damages.  Counsel did not argue or otherwise elaborate on the need for the instructions, and when the court refused them, the following exchange took place:

> THE COURT:         . . . And with the status of where we are in the contract and damages claim, the Court will not give these instructions.

[DEFENSE COUNSEL]: I understand, Your Honor. And, obviously, we couldn't have anticipated where we would be. That could be modified. But I understand the Court's ruling.

[¶63] We have held that W.R.C.P. 51(b) "requires counsel 'to inform the district court of the nature of the contended error and the specific grounds of objection, so that the court may exercise judicial discretion in reconsidering the instruction to avoid error.'" *Werner Enter., Inc. v. Brophy*, 2009 WY 132, ¶ 18, 218 P.3d 948, 954 (Wyo. 2009) (quoting *Rittierodt v. State Farm Ins. Co.*, 3 P.3d 841, 843 (Wyo. 2000)); *see also Merit Energy Co., LLC v. Horr*, 2016 WY 3, ¶ 23 n.6, 366 P.3d 489, 497 n.6 (Wyo. 2016). When that is not done, we review only for plain error. *Werner Enter.*, ¶ 19, 218 P.3d at 954 (citing *Nish v. Schaefer*, 2006 WY 85, ¶ 18, 138 P.3d 1134, 1141 (Wyo. 2006)).[10]

[¶64] Counsel for the City did not object when the district court refused its waiver instruction or otherwise offer specific grounds for its proffered instruction. Review for plain error requires the City to show that: 1) the record clearly reflects the alleged error; 2) the district court transgressed a clear and unequivocal rule of law; and 3) it was denied a substantial right resulting in material prejudice. *Wyant v. State*, 2020 WY 15, ¶ 5, 458 P.3d 13, 16 (Wyo. 2020) (quoting *Sindelar v. State*, 2018 WY 29, ¶ 16, 416 P.3d 764, 768 (Wyo. 2018)); *see also Werner Enter.*, ¶ 26, 218 P.3d at 957.

[¶65] Because the record clearly shows the district court's refusal of the City's waiver instruction, the first prong of plain error review is satisfied. The City cannot, however, satisfy the second prong because the record contains no evidence to support its waiver instruction. "[W]aiver is the 'intentional relinquishment or abandonment of a known right.'" *Rodriguez v. State*, 2019 WY 25, ¶ 25, 435 P.3d 399, 406 (Wyo. 2019) (quoting *Nunamaker v. State*, 2017 WY 100, ¶ 9, 401 P.3d 863, 866 (Wyo. 2017)). The only trial evidence concerning the stipulation was Mr. Vance's testimony, and nothing in that testimony supported a finding that he knowingly and intentionally relinquished his claim for damages.

[¶66] A district court "has extensive discretion in tailoring jury instructions, so long as they correctly state the law and fairly and adequately cover the issues presented." *Farrow v. State*, 2019 WY 30, ¶ 12, 437 P.3d 809, 815 (Wyo. 2019) (quoting *Merit Energy*, ¶ 23, 366 P.3d at 497). Because the City's evidence did not put the question of waiver in issue, we find no error in the district court's refusal of its waiver instruction.

---

[10] The concurring opinion points out an inconsistency in our precedent concerning application of the plain error standard of review in civil cases. We recognize this and agree that in the proper case, this is an issue that should be addressed, hopefully with guidance from the parties' briefing. In this case, the City urged the Court to review for an abuse of discretion, which we are unwilling to do given its failure to adequately assert its objection below. We instead give it the benefit of the doubt and review for plain error, saving the broader question of waiver versus plain error for another day.

**F.       Mitigation**

[¶67]  The City's mitigation argument is two-fold.  First, it argues what amounts to a sufficiency of the evidence claim, and second, it contends that the district court erred in excluding its evidence of other available firefighter positions.  We will address each claim separately.

**1.       Sufficiency of the Evidence**

[¶68]  The City points to evidence it submitted in support of its summary judgment motion, as well as evidence admitted at trial, and it contends that based on that evidence reasonable minds could only conclude that Mr. Vance failed to mitigate his damages.  It claims that the district court therefore should have ruled on summary judgment that Mr. Vance's claim for damages was barred by his failure to mitigate his damages, or that it should have granted the City's post-verdict W.R.C.P. 50 motion for judgment as a matter of law on the question. For the reasons that follow, we will not consider either claim.

[¶69]  As to the evidence on summary judgment, we have held that a trial court order denying summary judgment is not reviewable following a full trial on the merits.  *Johnson Cnty. Ranch Improvement #1, LLC v. Goddard*, 2020 WY 115, ¶ 25, 471 P.3d 307, 315 (Wyo. 2020) (citing *Halvorson v. Sweetwater Cnty. Sch. Dist. No. 1*, 2015 WY 18, ¶ 21, 342 P.3d 395, 402 (Wyo. 2015)).  Here, there was a full trial on the merits of Mr. Vance's damages, including the question of whether he mitigated them.  We therefore will not consider the mitigation evidence the City submitted on summary judgment or review the district court's order denying its motion for summary judgment on its mitigation claim.

[¶70]  With respect to whether the evidence at trial would support only a verdict that Mr. Vance's claim for damages was barred by his failure to mitigate, we have held that a sufficiency of the evidence claim is not reviewable on appeal unless a motion for judgment as a matter of law was made before the case was submitted to the jury.  *Johnson Cnty.*, ¶ 40, 471 P.3d at 319 (quoting *Belle Fourche Pipeline Co. v. Elmore Livestock Co.*, 669 P.2d 505, 512 (Wyo. 1983)); *see also CFE Racing Prod., Inc. v. BMF Wheels, Inc.*, 793 F.3d 571, 583 (6th Cir. 2015) ("Even where a party has made some reference to an issue in a Rule 50(a) motion that it later invokes as the basis for its renewed motion under Rule 50(b), the issue is not preserved if it was not raised in a sufficiently substantial way in the earlier motion.").  We have explained:

> The reasons for the rule are three-fold. *Little v. Bankers Life & Cas. Co.*, 426 F.2d 509, 511 (5th Cir. 1970). First, "a litigant may not gamble on the jury's verdict and then later question the sufficiency of the evidence on appeal." *Id.* Second, a party who does not move for judgment as a matter

25

of law "must have been of the view that the evidence made a case for the jury; he should not be permitted on appeal to impute error to the trial judge for sharing that view." *Id.* Finally, requiring a party to alert the court and opposing party of a claimed deficiency in the evidence prior to the jury deliberating allows the opposing party "to do whatever can be done to mend his case." *Quinn v. Sw. Wood Prods., Inc.*, 597 F.2d 1018, 1025 (5th Cir. 1979). "But if the court and [opposing] counsel learn of such a claim for the first time after verdict, both are ambushed and nothing can be done except by way of a complete new trial. It is contrary to the spirit of our procedures to permit counsel to be sandbagged by such tactics or the trial court to be so put in error." *Id.*

*Johnson Cnty.*, ¶ 41, 471 P.3d at 319.

[¶71]  The City raised its claim that the mitigation evidence precluded a jury award of damages in its Rule 50 motion after the jury rendered its verdict, but it did not raise it in its Rule 50 motion before the case went to the jury.  Its claim is therefore not reviewable on appeal.

## 2.    Exclusion of Mitigation Evidence

[¶72]  The City claims that the district court made a pretrial ruling that its evidence of available firefighter positions was admissible and then changed its ruling during trial.  The record does not support this claim.

[¶73]  The City filed a motion in limine asking that Mr. Vance be precluded from introducing evidence, testifying, arguing, or discussing his qualifications for or the availability of firefighter positions during his period of unemployment.  It argued that because Mr. Vance did not look for a firefighter position during that period, any such discussion, evidence, or testimony would be speculation or hearsay.  The court granted that motion orally during its first pretrial conference followed by a written order.[11]

[¶74]  At the final pretrial conference, the district court clarified that it did not intend its written order to preclude the City from offering evidence of available firefighter positions. In response, counsel for the City stated that he was not pre-offering the exhibits and that "if I think it's appropriate to present that as evidence in the defendant's case, then I will bring that up with the Court just like in the case of any other motion in limine before I say anything to the jury."

---

[11] The district court's liminal ruling has not been challenged, and its propriety is therefore not before the Court.

[¶75]  At trial, counsel for the City offered the evidence during his cross-examination of Mr. Vance's damages expert. The exchange went as follows:

> [DEFENSE COUNSEL]:  . . . I would like to ask this witness about this job and the compensation from this job and how it would affect the calculations based on the availability of this job.
>
> * * * *
>
> THE COURT:        You object to this proposed exhibit?
>
> [PLAINTIFF'S COUNSEL]:        I do. I don't believe this has – this exhibit has nothing to do with this. It is not relevant. . . .
>
>         . . . [T]his is a career that is only available if it's a current federal employee with –
>
> [DEFENSE COUNSEL]: Let me get a different job description. I have several.
>
> [PLAINTIFF'S COUNSEL]:        Every one of these has this.
>
> [DEFENSE COUNSEL]:   My apologies. I just missed that, Judge. Could I proffer?
>
> * * * *
>
> [DEFENSE COUNSEL]:   If I may, Your Honor, may I get my list?
>
> THE COURT:        Go ahead.
>
> [DEFENSE COUNSEL]:   Okay. What I would like to offer Your Honor, is Exhibits – well, 6, 12 and 24 of Exhibit JJ of the job descriptions, and I would like to have the witness – I can offer them if you need me to offer them.
>
>         I would ask you to allow the witness to testify about the effects of those salaries because those jobs were available for her calculation of losses.
>
> THE COURT:        [Counsel], your response.

* * * *

[PLAINTIFF'S COUNSEL]: It is not relevant. It would just confuse the issue. And this position was never available to the plaintiff as it requires a Colorado driver's license and certificates . . . .

THE COURT: Is that your response with regard to all exhibits or just Number 6?

* * * *

[PLAINTIFF'S COUNSEL]: JJ-12 is a fire department that is not relevant. Again, it confuses the issue and is misleading. This position wasn't available to the plaintiff. It also requires a Colorado driver's license as well as 60 hours of college credits. . . . .

And then 24, I believe, Your Honor, also Westminster; same objection and relevance and confusing and misleading.

The position was never available to the plaintiff as this also required a Colorado certificate and 30 hours of college credit . . . .

[DEFENSE COUNSEL]: We could reduce this down to Number 6. [Counsel's] objection is that it was misleading. It is not misleading because it informs the salary range.

[PLAINTIFF'S COUNSEL]: It's 593 where it shows that the qualifications required in order to hold this job include a driver's license as well as a Colorado certificate.

[DEFENSE COUNSEL]: My response is there is no page 593.

. . . It's [Exhibit] 16. I'm sorry. . . .

THE COURT: The Bates reference 578 is actually for military service.

[PLAINTIFF'S COUNSEL]: No. He has none of that.

28

[DEFENSE COUNSEL]: May I have a moment to look and see if I have another one, Judge?

THE COURT: No. So the Court is not going to allow the specific job descriptions in. . . .

My concern is the foundation of this witness to know about Mr. Vance. You can ask general questions about whether or not he applied for any jobs that are comparable, but you're not going to get into any specific one because I don't think there is foundation.

[¶76] The City does not challenge the district court's foundation ruling on the offered exhibits. As to other exhibits the City may have offered, its counsel made no offer of proof. We have observed that if a party does not make an offer of proof to establish the relevance of its evidence, "we have no way to gauge its admissibility or any prejudice that may have resulted from its exclusion." *Van Fleet v. Guyette*, 2020 WY 78, ¶ 29, 466 P.3d 812, 821 (Wyo. 2020).

Because Appellant's attorney did not preserve this issue by offering the evidence and then making an offer of proof if it was refused, his assertion that the district court somehow erred is without merit. Beyond that, without an offer of proof, we have no realistic means of evaluating whether it might have been admissible and whether failure to receive it could have been prejudicial. *Guy-Thomas v. Thomas*, 2015 WY 35, ¶ 12, 344 P.3d 782, 786 (Wyo. 2015).

*Van Fleet*, ¶ 28, 466 P.3d at 821 (quoting *Matter of LDB*, 2019 WY 127, ¶ 48, 454 P.3d 908, 922 (Wyo. 2019)).

[¶77] The district court did not deviate from its pretrial ruling on the admissibility of the City's mitigation evidence, and in the absence of an offer of proof, we must conclude that it did not abuse its discretion in excluding it. *See Van Fleet*, ¶ 29, 466 P.3d at 821.

## II.    Appeal No. S-20-0068: Denial of Attorney Fees, Costs, and Interest

## A.    Attorney Fees

[¶78] "Wyoming generally subscribes to the American rule regarding the recovery of attorney fees, under which . . . each party pays his or her own fees. A prevailing party may, however, be reimbursed for attorney fees when provided for by contract or statute." *EOG*

*Res., Inc. v. Floyd C. Reno & Sons, Inc.*, 2020 WY 95, ¶ 26, 468 P.3d 667, 676 (Wyo. 2020) (quoting *Douglas v. Jackson Hole Land Trust*, 2020 WY 69, ¶ 20, 464 P.3d 1223, 1229-30 (Wyo. 2020)). In his motion for an award of attorney fees, Mr. Vance claimed a statutory right to fees, which presents a question of law that we review de novo. *Bullock v. Bullock*, 2014 WY 131, ¶ 15, 336 P.3d 136, 140-41 (Wyo. 2014) ("The question of whether there is legal authority to award attorney fees is one of law, which we review de novo.") (quoting *Evans v. Moyer*, 2012 WY 111, ¶ 37, 282 P.3d 1203, 1214 (Wyo. 2012)).

[¶79]  The statute under which Mr. Vance sought his award of fees is a wage claim statute, which provides in relevant part:

> Whenever an employee who has quit, has been discharged from service, or because of action taken by the employer is prevented from working has cause to bring suit for ***wages earned and due***, and shall establish in court the amount which is justly due, the court shall allow to the plaintiff interest on the past due wages at the rate of eighteen percent (18%) per annum from the date of discharge or termination or from the date when unpaid wages are required to be paid as specified in this act, together with a reasonable attorney fee and all costs of suit. Prosecution of a civil action to recover unpaid wages does not preclude prosecution under W.S. 27-4-105.

Wyo. Stat. Ann. § 27-4-104(b) (LexisNexis Supp. 2020) (emphasis added).

[¶80]  This statute applies if Mr. Vance's suit against the City was one for "wages earned and due." This Court has already interpreted this term and concluded that it means "'wages' [as] defined in W.S. 27-4-501(a)(iii)." *NL Indus., Inc. v. Dill*, 769 P.2d 920, 925 (Wyo. 1989). Section 501(a)(iii), in turn, defines wages to mean "compensation, including fringe benefits, ***for labor or services rendered by an employee***." Wyo. Stat. Ann. § 27-4-501(a)(iii) (LexisNexis 2019) (emphasis added). We further held that "the employee protected by the attorney's fee statute is the employee suffered or permitted to work by W.S. 27-4-501(a)(ii)." *NL Indus.*, 769 P.2d at 925; *see also Jensen v. Fremont Motors Cody, Inc.*, 2002 WY 173, ¶ 31, 58 P.3d 322, 330 (Wyo. 2002) ("Proceedings that are outside the scope of the wage claim statute, although related to employment, do not allow for recovery of attorney fees.") (citing *NL Indus.*, 769 P.2d at 926).

[¶81]  The lost wages and benefits included in Mr. Vance's damages award were for periods during which he was not permitted to work. It did not include wages and benefits withheld from him for periods during which he worked or provided services. His suit and

resulting damages award were thus outside the wage claim statute, and he was not entitled to an award of attorney fees under that provision.[12]

## B.    Costs

[¶82]  Mr. Vance's motion for fees, costs, and interest also sought an award of costs pursuant to W.R.C.P. 54(d), which provides that upon proper motion, costs "should be allowed to the prevailing party."  The district court denied the motion without any discussion specific to the Rule 54(d) request for costs.  We review the court's ruling for an abuse of discretion.  *Acorn*, ¶ 10, 397 P.3d at 208 ("We review a district court's grant or denial of attorneys' fees and costs for abuse of discretion.") (quoting *Elk Ridge Lodge, Inc. v. Sonnett*, 2011 WY 106, ¶ 17, 254 P.3d 957, 962 (Wyo. 2011)).

> A court abuses its discretion when it acts in a manner that exceeds the bounds of reason under the circumstances. *Lykins v. Habitat for Humanity*, 2010 WY 118, ¶ 9, 237 P.3d 405, 408 (Wyo. 2010); *Snyder v. Lovercheck*, 992 P.2d 1079, 1084 (Wyo. 1999). "The burden is placed upon the party who is attacking the trial court's ruling to establish an abuse of discretion, and the ultimate issue is whether the court could reasonably conclude as it did." *Nish v. Schaefer*, 2006 WY 85, ¶ 6, 138 P.3d 1134, 1137 (Wyo. 2006); *Snyder*, 992 P.2d at 1084.

*Acorn*, ¶ 10, 397 P.3d at 208 (quoting *Jones v. Artery*, 2012 WY 63, ¶ 8, 275 P.3d 1244, 1247 (Wyo. 2012)).

[¶83]  As we stated above, the district court did not specify why it denied Mr. Vance an award of costs.  Based on its ruling on attorney fees, we presume that it may have done so because Mr. Vance did not plead a basis for costs in his complaint.  Rule 54 provides, however, that a "final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings."  W.R.C.P. 54(c).  We have held that this rule allows a district court "to award the relief to which a prevailing party is 'entitled' regardless whether such relief was sought in the complaint."  *Halling v. Yovanovich*, 2017 WY 28, ¶ 33, 391 P.3d 611, 622 (Wyo. 2017) (quoting *Equal Emp't Opportunity Comm'n v. Massey-Ferguson, Inc.*, 622 F.2d 271, 277 (7th Cir. 1980)).

[¶84]  Based on the record, we are unable to discern a basis to altogether deny Mr. Vance's Rule 54(d) motion for costs.  *See, e.g.*, *Halling*, ¶ 32, 391 P.3d at 622 ("Although we may

---

[12] The district court denied Mr. Vance's motion for attorney fees on the grounds that he failed to plead a claim for relief under Wyo. Stat. Ann. § 27-4-104 and failed to justify the fees under the federal lodestar test.  Because the statute does not authorize an award of fees, we will not address these rulings.

affirm the district court's ruling on any legal basis appearing in the record, we find no basis for the district court's failure to award prejudgment interest."). The question of what costs to award, however, remains committed to the district court's discretion. *Jones*, ¶ 10, 275 P.3d at 1248.

> Rule 501(a) [of the Uniform Rules for District Courts] details the taxable costs and the requirements for a certified bill of costs. We have recognized that Rule 501(a)(3) sets forth guidelines for awarding costs, but that those guidelines are not mandatory. *Garrison* [*v. CC Builders, Inc.*, 2008 WY 34], ¶ 42, 179 P.3d [867,] 878 [(Wyo. 2008)] (citing Wyo. U.R.D.C. 501(a)(4)). As indicated by our standard of review, the question whether and what costs to award is discretionary. *Id.*

*Jones*, ¶ 10, 275 P.3d at 1247-48.

[¶85] Because what costs to award is within the district court's discretion, we remand for its determination of which of Mr. Vance's costs may appropriately be awarded under U.R.D.C. 501(a). *See also Jones*, ¶¶ 12-28, 275 P.3d 1248-50.

## C.    Pre- and Post-Judgment Interest

[¶86] Mr. Vance's motion for attorney fees, costs, and interest sought both pre- and post-judgment interest. Ms. Hanft contends that the district court erred in failing to include an award for either in its final judgment.

## 1.    Prejudgment Interest

[¶87] In his motion for fees, costs, and interest, Mr. Vance requested prejudgment interest at the rate provided in the wage claim statute, but he also cited the rate set by Wyo. Stat. Ann. § 40-14-106(e). The district court cited only the wage claim statute and denied Mr. Vance's motion because he did not seek relief under that statute in his complaint. Our review is as follows:

> The question of whether a judge *is entitled to* award prejudgment interest in a particular case is a question of law that we review *de novo*, while the question of whether prejudgment interest *should be* awarded is reviewed for an abuse of discretion.

*Halling*, ¶ 30, 391 P.3d at 621 (quoting *KM Upstream, LLC v. Elkhorn Constr., Inc.*, 2012 WY 79, ¶ 44, 278 P.3d 711, 727 (Wyo. 2012)) (emphasis in original).

[¶88]  As discussed earlier, the wage claim statute under which Mr. Vance claimed both attorney fees and prejudgment interest does not apply.  Instead, prejudgment interest is available if a two-part test is met: "(1) the claim must be liquidated, as opposed to unliquidated, meaning it is readily computable via simple mathematics; and (2) the debtor must receive notice of the amount due before interest begins to accumulate."  *Halling*, ¶ 31, 391 P.3d at 621 (quoting *KM Upstream, LLC*, ¶ 45, 278 P.3d at 727).  "If there is no agreement or provision of law for a different rate, the interest of money shall be at the rate of seven percent (7%) per annum."  Wyo. Stat. Ann. § 40-14-106(e) (LexisNexis 2019).  Because the wage claim statute does not apply, and the record contains no agreement to a different rate, the applicable rate if prejudgment interest were available in this case would be seven percent.

[¶89]  Mr. Vance requested damages in excess of $400,000, and the jury returned a verdict awarding around $280,000.  The verdict form divided the award as follows:

> QUESTION ONE:
>
> What amount of damages, if any, has Plaintiff incurred for loss *of wage or salary* from December 5, 2012 through February 5, 2013, minus the amount you have determined if Plaintiff failed to take reasonable steps under the circumstances to reduce his own damages?
>
> $8,695.13
>
> QUESTION TWO:
>
> What amount of damage, if any, has Plaintiff incurred for loss [of] *benefits* from December 5, 2012 through February 5, 2013, minus the amount you have determined if Plaintiff failed to take reasonable steps under the circumstances to reduce his own damages?
>
> $0
>
> QUESTION THREE:
>
> What amount of damages, if any, has Plaintiff incurred for loss *of wage or salary* from October 1, 2013 through March 13, 2014, minus the amount you have determined if Plaintiff failed to take reasonable steps under the circumstances to reduce his own damages?

33

$23,091.17

QUESTION FOUR:

What amount of damage, if any, has Plaintiff incurred for loss [of] *benefits* from October 1, 2013 through March 13, 2014, minus the amount you have determined if Plaintiff failed to take reasonable steps under the circumstances to reduce his own damages?

$0

QUESTION FIVE:

What amount of damages, if any, has Plaintiff incurred for loss *of wage or salary* from November 5, 2014 through November 19, 2018, minus the amount you have determined if Plaintiff failed to take reasonable steps under the circumstances to reduce his own damages?

$203,875.86

QUESTION SIX:

What amount of damage, if any, has Plaintiff incurred for loss *of benefits* from November 5, 2014 through November 19, 2018, minus the amount you have determined if Plaintiff failed to take reasonable steps under the circumstances to reduce his own damages?

$14,365

QUESTION SEVEN:

What amount of damage for out of pocket cost for Health and Medical Insurance has been incurred by Plaintiff?

$30,330.14

[¶90]  Prejudgment interest "is a measure of damages to compensate for the lost use of money during the time it was owed a prevailing party," *Lew v. Lew*, 2019 WY 99, ¶ 20, 449 P.3d 683, 688 (Wyo. 2019), and a party does not waive its request for it by omitting it

from his complaint. *Halling*, ¶ 33, 391 P.3d at 622. The district court thus erred in denying Mr. Vance's request on that basis.

[¶91] Nonetheless, since prejudgment interest is a type of damages, Mr. Vance bore the burden of establishing it "with a reasonable degree of certainty." *See Mantle v. North Star Energy & Constr. LLC*, 2019 WY 29, ¶ 78, 437 P.3d 758, 786 (Wyo. 2019) ("A plaintiff 'has the burden of producing sufficient evidence to prove his damages' and those damages must be established 'with a reasonable degree of certainty.'") (quoting *Acorn*, ¶ 76, 386 P.3d at 761). In his request for prejudgment interest, Mr. Vance made no effort to show which of the damages awarded in the different verdict categories were readily computable via simple mathematics, at what point they were liquidated, or when the City had notice of them. Under these circumstances, we find no abuse of discretion in the district court's denial of his request for prejudgment interest. *See Stocki v. Nunn*, 2015 WY 75, ¶ 94-96, 351 P.3d 911, 935-36 (Wyo. 2015) (upholding denial of prejudgment interest where it was "not possible to determine from the jury's verdict what portion of the medical expenses that were readily computable and presented to the insurer was also included in the award").

## 2. Post-Judgment Interest

[¶92] We have held that since decrees and judgments for the payment of money bear post-judgment interest as a matter of law, a district court does not err when it fails to specify post-judgment interest in an order. *Halling*, ¶ 38, 391 P.3d at 624.

> All decrees and judgments for the payment of money bear post-judgment interest. *Parker v. Artery*, 889 P.2d 520, 527 (Wyo. 1995) ("In Wyoming, statutory interest begins to accrue when a judgment is entered."). Post-judgment interest is available under Wyo. Stat. Ann. § 1-16-102(a) and (b) whether it is stated in the judgment or not.

*Halling*, ¶ 37, 391 P.3d at 623-24.

[¶93] Wyo. Stat. Ann. § 1-16-102 (LexisNexis 2019) provides that unless the parties to a contract agree otherwise, a judgment founded on that contract bears interest at the rate of ten percent per year until paid. The record contains no indication that the parties agreed to a different rate, so the judgment in favor of Mr. Vance bears post-judgment interest at the annual ten-percent rate.[13]

---

[13] As with his motion for costs, Mr. Vance did not waive his entitlement to post-judgment interest by failing to plead it in his complaint. *Halling*, ¶ 33, 391 P.3d at 622.

## CONCLUSION

[¶94]   We affirm the district court's entry of judgment on the jury's verdict and its denial of attorney fees and prejudgment interest.  As a matter of law, the judgment bears post-judgment interest, and the court thus did not err when it failed to specify post-judgment interest in its order.  The court erred in denying Mr. Vance's request for an award of costs on the ground that he did not include the request in his complaint.  We affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

**GRAY, Justice, specially concurring, in which KAUTZ, Justice, joins.**

[¶95]   I concur in the result of the majority opinion.  I write separately because I question the use of a plain error standard of review in a civil case where there was no objection to the claimed error at trial, no issue of a fundamental nature, and no request by the parties for the application of a plain error standard of review.  Here, the majority evaluated the City's assertion of error—the trial court's refusal to give its proposed waiver instructions—using a plain error standard of review.  I conclude that the City waived any objection to the jury instructions and failed to demonstrate why we should apply a plain error standard of review to those instructions.

[¶96]   Generally, when a party fails to raise an issue before the trial court in a civil case, we decline to address it on appeal.  *See, e.g.*, *Int. of VS*, 2018 WY 119, ¶ 25, 429 P.3d 14, 21–22 (Wyo. 2018) ("Normally, we will not consider an issue raised for the first time on appeal[.]" (quoting *In Int. of ECH*, 2018 WY 83, ¶ 21, 423 P.3d 295, 302 (Wyo. 2018))); *Fleig v. Est. of Fleig by & through Fleig*, 2018 WY 30, ¶ 8, 413 P.3d 638, 641 n.1 (Wyo. 2018) ("There are few rules more firmly settled in Wyoming jurisprudence than the rule that this court does not consider for the first time on appeal issues that were neither raised in, nor argued to, the trial court." (quoting *Oatts v. Jorgenson*, 821 P.2d 108, 111 (Wyo. 1991))); *Lankford v. City of Laramie*, 2004 WY 143, ¶ 17, 100 P.3d 1238, 1243 (Wyo. 2004) ("[T]he appellants did not raise this issue below, and we will not consider it on appeal."); *Cooper v. Town of Pinedale*, 1 P.3d 1197, 1208 (Wyo. 2000) ("Our general rule is that we will not consider issues not raised in the court below." (citing *WW Enters., Inc. v. City of Cheyenne*, 956 P.2d 353, 356 (Wyo. 1998))).

[¶97]   Plain error is an exception to the general rule.  The plain error doctrine is codified in the Wyoming Rules of Criminal Procedure.  *See* W.R.Cr.P. 52(b) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.").  Rule 61 of the Wyoming Rules of Civil Procedure defines harmless error; however, the Rules of Civil Procedure do not address plain error.  W.R.A.P. 9.05 provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court."

[¶98]   While "[t]he plain error doctrine is almost exclusively a criminal concept," *Belle Fourche Pipeline Co. v. Elmore Livestock Co.*, 669 P.2d 505, 519 (Wyo. 1983) (Brown, J., concurring in part and dissenting in part), this Court has applied it in civil cases where the jurisdictional rights or rights of a fundamental nature are operative.  *See Int. of: AA*, 2021 WY 18, 479 P.3d 1252 (Wyo. 2021); *ECH*, ¶ 21, 423 P.3d at 302; *see also Cooper*, 1 P.3d at 1208; *Bredthauer v. TSP*, 864 P.2d 442, 447 (Wyo. 1993).  Issues that qualify under one of these exceptions are evaluated under the plain error doctrine.  *See VS*, ¶ 25, 429 P.3d at 21–22; *AA*, 479 P.3d 1252; *ECH*, ¶ 21, 423 P.3d at 302.

[¶99] Admittedly, we have, on rare occasion, applied the plain error doctrine *without* reference to jurisdictional questions or rights of a fundamental nature. *Vahai v. Gertsch*, 2020 WY 7, ¶ 58, 455 P.3d 1218, 1234 (Wyo. 2020); *In re U.S. Currency Totaling $7,209.00*, 2012 WY 75, ¶ 14, 278 P.3d 234, 238 (Wyo. 2012); *W. Am. Hous. Corp. v. Vandon, Inc.*, 2008 WY 62, 185 P.3d 19 (Wyo. 2008); *Case v. Outback Pipe Haulers*, 2007 WY 181, 171 P.3d 514 (Wyo. 2007). In these cases, we have failed to evaluate whether the application of plain error is justified. We have relied mostly on criminal precedent and have not required a more stringent test or provided a detailed analysis supporting an evaluation using the doctrine. *See, e.g.*, *Vahai*, ¶ 58, 455 P.3d at 1234 ("Because Ms. Vahai did not object to any of the allegedly improper comments, our review is for plain error."); *U.S. Currency*, ¶ 25, 278 P.3d at 240 ("[I]ssues . . . not raised below . . . are . . . subject to a plain error analysis."); <u>*W. Am. Hous.*</u>, ¶ 17, 185 P.3d at 24 ("Failure to object to the competence of a witness at the time of the trial limits our review to plain error."); *Case*, ¶ 2, 171 P.3d at 515 ("Because Mr. Case did not object to the district court's ruling and our review is limited to determining whether plain error occurred, we affirm."). I believe the application of the plain error doctrine in these cases was an unintended expansion of that standard of review.

[¶100] I would make clear that the application of plain error in civil cases continues to be limited to questions of a fundamental nature or jurisdictional issues. In *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1130 (10th Cir. 2011), the Tenth Circuit Court explained why finding plain error in civil cases presents an "extraordinary, nearly insurmountable burden":

> Our adversarial system endows the parties with the opportunity—and duty—to craft their own legal theories for relief in the district court. It is the significant but limited job of our appellate system to correct errors made by the district court in assessing the legal theories presented to it, not to serve as "a second-shot forum . . . where secondary, back-up theories may be mounted for the first time." *Tele-Communications, Inc. v. C.I.R.*, 104 F.3d 1229, 1233 (10th Cir. 1997) (internal quotation marks omitted). Affording plenary appellate review to newly raised legal theories would do much to undermine this adversarial and appellate order. It would force the judicial system to permit costly "do-overs" in the district court anytime a party can conceive a new winning argument on appeal—even when the district court answered perfectly every question of law the parties bothered to put before it. It would also work unfairness on appellees who, no doubt, thought they knew the legal questions at issue in the case by the time of appeal, only to be surprised when a new threat to their victory in the district court emerges from nowhere for the first time in the pages of

an appellate brief. Under our plain error rule, parties have the opportunity not only to present whatever theory they desire in the district court, but also to explain why their substantial rights and the integrity of our judicial system justify undoing the work of that district court on the force of an argument they didn't present the first time around. It would be wasteful, and an invitation for potential abuse, to permit a second trip to the district court on the basis of any lesser showing.

*Richison*, 634 F.3d at 1130. "If a newly raised legal theory is entitled to appellate review at all—if it wasn't waived before the district court—it may form a basis for *reversal* only if the appellant can satisfy" the Court that questions of jurisdiction or of a fundamental nature hang in the balance. *Id. See* 9B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2472 (3d ed. 2008). *See also Hicks v. Avery Drei, LLC*, 654 F.3d 739, 744 (7th Cir. 2011) (applying **plain error** "rarely" and only where "exceptional circumstances or . . . miscarriage of justice could occur"); *Ledford v. Peeples*, 657 F.3d 1222, 1258 (11th Cir. 2011) (announcing **plain error** in **civil cases** rarely found); *Russian Media Grp., LLC v. Cable Am., Inc.*, 598 F.3d 302, 308 (7th Cir. 2010) ("it will be a 'rare case in which failure to present a ground to the district court has caused no one—not the district judge, not us, not the appellee—any harm of which the law ought to take note'" (quoting *Amcast Indus. Corp. v. Detrex Corp.*, 2 F.3d 746, 749–50 (7th Cir. 1993))); *Wilson v. Brinker Int'l, Inc.*, 382 F.3d 765, 771 (8th Cir. 2004) ("stringently limited standard of review" (quoting *Horstmyer v. Black & Decker, (U.S.), Inc.*, 151 F.3d 765, 771 (8th Cir. 1998))); *Bath Junkie Branson, L.L.C. v. Bath Junkie, Inc.*, 528 F.3d 556, 561 (8th Cir. 2008) (evaluating **plain error** through effects on substantial rights, fairness, integrity or judicial proceeding's public reputation); *Dean Witter Reynolds, Inc. v. Fernandez*, 741 F.2d 355, 360–61 (11th Cir. 1984) (explaining **plain error** does apply to **civil** matters but should be applied with extreme caution); *Richison*, 634 F.3d at 1130 (quoting *Emps. Reinsurance Corp. v. Mid-Continent Cas. Co.*, 358 F.3d 757, 770 (10th Cir. 2004)).

[¶101] Here, as in other civil cases, the appellant must show why plain error should be used to review the matter it failed to bring to the notice of the trial court. The City made no effort to explain why its substantial rights or the integrity of the judicial system justify plain error review of the instructions. Whether the trial court erred in not providing a waiver instruction is not a jurisdictional question nor is it a question of such fundamental nature that it justifies nascent consideration. I would determine the City's objection waived.